## THE PEOPLE EX REL. MARY M. LEDWITH, v. THE BOARD OF TRUSTEES OF BELLEVUE, ETC.

(238 N. Y. 403.)

(1) HABEAS CORPUS—INSANITY LAW—WHEN PERSON COMMITTED BY MAGIS-TRATE'S COURT TO HOSPITAL FOR EXAMINATION AS APPARENTLY INSANE ENTITLED TO WRIT OF HABEAS CORPUS—POWER OF SUPREME COURT TO INQUIRE INTO SANITY OF PERSON HELD AS ALLEGED INCOMPETENT.

Where, under section 87 of the Insanity Law, a person has been committed by a magistrate's court to a hospital as apparently insane, it is the duty of the hospital authorities, upon examination, to imme-diately discharge the patient if they believe him to be sane, or if they determine that he is insane to take the necessary steps provided by other provisions of the Insanity Law to have him committed to a proper institution for treatment. He can be held in custody only for the purpose of having his sanity thus determined. Where no such pro-ceedings have been taken, although the authorities have made a full and complete examination and no other is necessary, the patient is entitled to a writ of habeas corpus and the Supreme Court justice before whom the writ is returnable has power to inquire whether he was held under the commitment or held illegally under color of the commitment. (People ex rel. Edwards v. Superintendent, etc., 235 N. Y. 398, distinguished.)

(2) SAME—REVERSAL BY APPELLATE DIVISION OF THE LAW, ERROR—ORDER OF SPECIAL TERM SUSTAINED.

The Appellate Division was in error in dismissing the writ and remanding the relator as matter of law. In reversing their conclusion as to the law the order of the special term sustaining the writ must be affirmed.

People ex rel. Ledwith v. Bd. of Trustees, 208 App. Div. 705, reversed.

(Argued May 13, 1924; decided June 6, 1924.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 7, 1924, which reversed an order of Special Term sustaining a writ of habeas corpus, dismissed such writ and remanded the relator to custody.

*Julius Albers* for appellant. The commitment authorized by section 87 of the Insanity Law, being provisional, cannot deprive the Supreme Court of its power to decide at once the main question. People ex rel. Reisner v. N. Y. N. & C. Hosp., 190 App. Div. 562; 230 N. Y. 119.) The commitment authorized by section 87 of the Insanity Law being provisional and not final, is not within the provisions of or governed by sections 1252 (Subd. 2) and 1254 of the Civil Practice Act, respectively requiring remandment and forbidding inquiry. (People ex rel. Doyle v. Atwood, 232 N. Y. 96.) The right of a sane man not accused of crime or wrongdoing to obtain his liberty through habeas corpus is absolute. (Matter of Dixon, 11 Abb. N. C. 118; Matter of Larner, 79 N. Y. Supp. 1039.)

*George P. Nicholson, Corporation Counsel (John F. O'Brien* and *George H. Cowie* of counsel), for respondent. The only questions to be considered in a habeas corpus proceeding are the questions of jurisdicton and regularity. (People ex rel. Danziger v. P. E. House of Mercy, 128 N. Y. 180; People ex rel. Kuhn v. P. E. House of Mercy, 133 N. Y. 207; People

ex rel. Doyle v. Atwell, 232 N. Y. 96; People ex rel. Edwards v. Superintendent, etc., 235 N. Y. 398; Matter of Andrews, 126 App. Div. 794.)

CRANE, J.:

Section 87 of the Insanity Law (Cons. Laws, ch. 27), as amended by chapter 226 of the Laws of 1923, provides as follows:

" Whenever in the city of New York an information is laid before a magistrate that a person is apparently insane the magistrate must issue a warrant directed to the sheriff of the county in which the information is made, or any marshal or policeman of the city of New York, reciting the substance of the information, and commanding the officer forthwith to arrest the person alleged to be insane, and bringing him before the magistrate's court out of which the warrant was issued.    If upon arraignment it appears to the magistrate presiding that the person so arraigned before him is apparently insane it shall be the duty of the magistrate, if such information is laid in the boroughs of Manhattan and the Bronx, to commit such apparently insane person to the care and custody of the board of trustees of Bellevue and allied hospitals at Bellevue hospital,  *  *  *  kept for a period not to exceed thirty days in a safe and comfortable place until the question of his sanity be determined as prescribed by this chapter,  *  *  *.    Whenever in the city of New York a person is committed as apparently insane as above provided it shall be the duty of the board of trustees of Bellevue and allied hospitals or the commissioner of public welfare, as the case may be, to forthwith take proper measures for the determination of the question of the insanity of such person. * * *."

Under this provision of the Insanity Law, Judge Otto A. Rosalksy, one of the judges of the court of general sessions, issued his warrant for the arrest of one Thomas A. Ledwith,

and on the 16th day of April, 1923, committed him to Bellevue
Hospital as an apparently insane person until his sanity be
determined in accordance with the provisions of law, the de-
tention not to exceed thirty days. The commitment states
that it was issued by the judge sitting as a magistrate.

Ledwith is a lawyer and at the time of his arrest was
employed by the Title Guarantee and Trust Company, at 175
Remsen street, Brooklyn. After Ledwith had been in the
hospital under examination for about two weeks, his wife,
Mary M. Ledwith, by petition, verified May 1, 1923, obtained
from Mr. Justice Callaghan of the Supreme Court a writ
of habeas corpus, made returnable before him, requiring the
authorities to produce her husband, Thomas A. Ledwith, and
to make return as to the cause of his detention. The answer
or return made to this writ was by Dr. M. S. Gregory, director
in charge of the psychopathic ward of Bellevue Hospital,
wherein he set forth a copy of the commitment and stated:
" Deponent, in conjunction with Doctor E. J. Barnes, Chief
Physician of the Psychopathic Ward of the said Bellevue
Hospital, has on various occasions since the said 16th day of
April, 1923, examined and observed the said Thomas A.
Ledwith as to his mental condition. We have also examined
voluminous papers and interviewed various members of his
family, as well as others who have come in contact with the
said Thomas A. Ledwith, and have reached the conclusion that
in our opinion he is insane."

The issue presented by the petition and the return was
heard by Justice Callaghan on May 7, 1923, and after taking
the testimony of witnesses, including the medical experts for
both sides, and the alleged incompetent, he discharged the
said Ledwith as being sane. Upon appeal, the Appellate
Division reversed this order of Justice Callaghan, dismissed
the writ and remanded the relator to the custody of the board
of trustees of Bellevue Hospital. When it appeared, so that

court held, that the man had been committed by a magistrate's court as apparently insane under section 87 of the Insanity Law there was no power in the Supreme Court to examine further into the cause of detention or to determine whether on the day of the hearing or the return of the writ he was sane. The case of People ex rel. Edwards v. Superintendent, etc. (235 N. Y. 398) was cited as an authority for this conclusion. That case did not go so far. The facts were these, as stated at the opening of the opinion: " Upon this information, a warrant was issued, and two days thereafter the relator was arraigned in the magistrate's court for the third district before the magistrate presiding. An adjournment was ordered to January thirteenth, the relator being paroled in the custody of his counsel and thereafter there were successive adjournments, all by consent, till March 23, when again by consent a trial was directed before another magistrate, sitting in the same court. This magstrate heard testimony both in support of the information and against it. More than ten months after arraignment, on November 18, 1922, the case was finally submitted. In the meantime, thirty-one adjournments had been ordered, the relator on every occasion consenting thereto." When the writ of habeas corpus was obtained after the commitment of Edwards to Bellevue Hospital to be examined, the only point raised was the question of jurisdiction of the magistrate to make the commitment. It was claimed that by the adjournments he had lost jurisdiction and that there was no authority in law, even with consent, to transfer the hearing of the matter before another magistrate. The evidence was not returned with the writ nor brought before us. There was no question raised upon the return of the writ as to the sanity or insanity of the alleged incompetent. With merely these questions before us on the record, we held that the magistrate had not lost jurisdiction by reason of the adjournments or the

transfer of the case on consent to another magistrate, and we dismissed the writ and remanded the relator.

It will thus be seen that the question of the power of the Supreme Court to inquire into the sanity of a person held in custody, as an alleged incompetent, was not before us in that case.

Section 93 of the Insanity Law reads:

" Any one in custody as an insane person is entitled to a writ of habeas corpus, upon a proper application made by him or some friend in his behalf. Upon the return of such writ, the fact of his insanity shall be inquired into and determined. * * * "

Was Thomas A. Ledwith in custody as an insane person so as to entitle him to the benefit and privileges of this statute? He was guilty of no crime. He had been charged with no offense. The sole ground of his commitment was that he appeared to be insane. His alleged insanity was the only thing which gave the courts jurisdiction over him or power to hold him in confinement. His wife alleged in her petition that he was sane and that the commitment was the result of illegal acts and false assertions on the part of persons with whom he had litigation as a lawyer. By the return, the hospital authorities said that they had made a full and complete examination of Ledwith as required by section 87 of the Insanity Law and that they had determined him to be insane.

It was the duty of the hospital authorities upon examining Ledwith to immediately discharge him if they believed him to be sane. It was likewise their duty if they determined that he was insane to take the necessary steps provided by other provisions of the Insanity Law to have him committed to the proper institution for treatment for the mental disorder. Upon a certificate of lunacy made by two qualified examiners in lunacy he could have been committed by a judge of a court of record as provided in section 80 of the Insanity

Law. No such proceedings were taken. Ledwith was simply held apparently for the balance of the thirty days, although no other examination was necessary.

Under these circumstances, he was entitled to the writ of habeas corpus, either under section 93 of the Insanity Law or, if that be inapplicable, under article 77 of the Civil Practice Act relating to habeas corpus. The Supreme Court justice, therefore, had power to examine into the cause of his detention.

The Appellate Division was, therefore, in error in dismissing this writ and remanding the relator as matter of law. Whether or not the evidence produced before the hearing justice justified the discharge of Ledwith, we are not called upon to state. Such matter is not before us. The Appellate Division reversed upon the law as above stated. The justices were mistaken as to the scope and effect of our decision in the Edwards case. In reversing their conclusion as to the law, we must, therefore, affirm the order of Justice Callaghan sustaining the writ and discharging Thomas A. Ledwith.

Order of the Appellate Division reversed and that of Special Term affirmed, without costs.

POUND, J. (concurring) :

The purpose of section 87 of the Insanty Law is to keep an apparently insane person in custody " until the question of his sanity be determined as prescribed by " the Insanity Law, not to exceed thirty days. The method of determining the question of sanity under the Insanity Law is, in brief, as follows: Section 80 provides for an order of commitment of an insane person, upon a certificate of lunacy. Although the judge may, for reasons to be stated, dispense with personal service of notice of application for such an order (§ 82), ample provisions are made (§ 83) or a review of the order

of commitment and for the determination by a jury of the question of insanity.

Relator could legally be held in custody under the commitment only for the purpose of having his sanity thus determined.

But relator was held for another purpose only, *i.e.,* the purpose of observation. He was " examined and observed as to his mental condition " but no steps were taken for a judicial determination of his sanity. As appears by the return, the purposes of the commitment were thus perverted. Insanity is a condition, not a crime. A man may not be committed on a charge of apparent insanity, to be held for thirty days while the physicians are studying his case. The authorities are to proceed with the duty of having his condition determined judicially, not medically merely, during the period of commitment. For his welfare and the public welfare, he may be kept in proper custody temporarily while such proceedings are being instituted and are pending. If two physicians do not make a certificate of lunacy with reasonable promptness he is entitled to his discharge. It seems intolerable to hold that a sane man may be kept in custody for thirty days merely for the purpose of seeing whether insanity will develop.

Relator was entitled to the writ of habeas corpus to inquire into the fact whether he was held under the commitment or held illegally under color of the commitment.

LEHMAN, J. (dissenting) :

Thomas A. Ledwith has been committed " to the care and custody of the Trustees of Bellevue and Allied Hospitals at Bellevue Hospital and therein kept in a safe and comfortable place until the question of Thomas A. Ledwith's sanity be determined in accordance with the provisions of law in such case made and provided. The detention of said Thomas A.

Ledwith under this order is not to exceed thirty days." The statute prescribes exactly how that determination shall be made and at the time the writ of habeas corpus was issued no determination had yet been made as prescribed by the statute, and thirty days had not yet elapsed. It is true that the hospital authorities state in their answer that in ther opinion Ledwith is insane, but their opinion can constitute no "determination" that he is insane, for only the court can make such determination. Their "opinion" would merely result in a certificate to that effect upon which the court might thereafter base a determination. He has been committed not as "an insane person" but as an "apparently insane persons," and he may be held as such only until the question of his insanity is determined as prescribed by statute, and his commitment is merely for the purpose of providing for his care and custody until the determination is made, and for the purpose of aiding in such determination. Section 93 of the Insanity Law (Cons. Laws, ch. 27) gives "any one in custody as an insane person" the right to a writ of habeas corpus, and upon the return of the writ "the fact of his insanity shall be inquired into and determined," but unless Ledwith has been in custody "as an insane person" within the meaning of that section from the time he was committed I cannot see how the fact that the hospital physicians have hereafter concluded that he is insane can change his status. Until determination that he is insane he is still in custody only as a person who is apparently insane. Section 93 of the Insanity Law was not intended to give the courts any general right to inquire into the cause of his detention. That right is one which is guaranteed by the Constitution and provided for by the Civil Practice Act. Section 93 of the Insanity Law presupposes that the cause of his detention is known, viz., that he is "in custody as an insane person." It merely gives the court an additional right to determine upon the return of the

writ whether a person previously committed as insane is, at that time, insane, though his detention until that time was legal unpder the earlier determination of the court. I cannot believe that this section was also intended to give one committed as " apparently insane " a right to have the fact of insanity determined upon the return of a writ of habeas corpus, either before or after the hospital physicians have concluded he is insane. An orderly method for the determination of whether a person is insane together with a method of review or rehearing before a jury, is provided by the Insanity Law. I do not think that the legislature which provided this method intended that as long as its procedure was being followed a justice of the Supreme Court could intervene and summarily determine upon the return of a writ of habeas corpus whether a person held in custody pending determination of his sanity is in fact insane. These considerations, in my opinion, are confirmed by the fact that under section 80 of the Insanity Law no justice of the Supreme Court except " of the judicial district, in which the alleged insane person resides or may be," has power to make an order of commitment, while a writ of habeas corpus may be issued and made returnable before any justice of the Supreme Court. In the present case it was issued and made returnable before a justice of the Second Department, though Ledwith resided and at the time was in the First Department. I do not think that his production thereafter in response to the writ could give a justice in the Second Department the power to commit him as an insane person if upon the hearing he determnied that Ledwith was insane. Moreover, the commitment could be made only upon a certificate of lunacy signed by two qualified medical examiners and upon a verified petition, and I do not see how the justice hearing the writ could require a person authorized to make such a petition to do so. The result is that if the justice decided that at that time Ledwith was

insane, he could only, in my opinion, dismiss the writ and remand him to Bellevue Hospital until the actual determination was made as prescribed by the statute. We should not hold that the legislature has authorized so clumsy a procedure merely by doubtful implication.

It is urged, however, that Ledwith's commitment is not for a definite period but only " until the question of his sanity be determined " as prescribed by the statute, and that the authorities of Bellevue Hospital are required to have such determination made as promptly as possible. I concede that this may be true, but veen though I should assume that a person committed as in this case is entitled to his discharge upon proof that he is being detained for an unreasonable time, and even though I should further assume that such discharge may be obtained upon a writ of habeas corpus, yet still I do not see how the court could upon the return of the writ pass upon any question except whether he is being detained an unreasonable length of time, and the question of his actual sanity or insanity would not be a determining consideration. Moreover, no claim is made by the petition that Ledwith has been detained an unreasonable length of time and that omission has not been supplied by the statement of the return that in the opinion of the physicians he is insane, for that statement still does not show that they have had thereafter reasonable opportunity to have the court determine the question of his sanity as prescribed in the statute.

In my opinion the only question that can be raised by the writ is whether Ledwith's detention under the commitment is lawful. I do not attempt to decide under what circumstances such detention would be unlawful, for the petition and return raise no issue on this point. The justice at Special Term has passed only upon the question of Ledwith's sanity and that question was not before him. For these reasons I believe that neither this court nor the Appellate Division could affirm his determination.

28

HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur with CRANE and POUND, JJ.; ANDREWS, J., concurs in result; LEHMAN, J., dissents in memorandum.

Order reversed, etc.