THE PEOPLE OF THE STATE OF NEW YORK ex rel. JULIA MARSHALL, Appellant, against BLAKELY R. WEBSTER, as Superintendent of Dannemora State Hospital, Respondent.

Third Department, November 10, 1943.

*Edward Carey Cohen,* attorney for appellant.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Patrick H. Clune* and *Robert C. Booth, Assistant Attorneys-General* of counsel), for respondent.

Hill, P. J. Hackett Marshall, in October, 1938, was convicted of assault in the second degree in the Court of General Sessions, New York County. He was sentenced to Sing Sing Prison to serve an indeterminate term, minimum five years, maximum ten years, having previously been convicted of a felony. A writ of habeas corpus in his behalf was applied for by his wife, Julia Marshall. The verified return made by the Superintendent of Dannemora State Hospital where Marshall is now confined, contains the following: "That the said relator became eligible for parole on May 1, 1942, and at a meeting of the State Board of Parole held at this Hospital on April 21, 1942, parole was denied because of his mental condition. * * * Deponent further alleges that said Hackett Marshall is, in his opinion, an insane person and that he is in need of further hospital care and treatment". The order dismissing the writ contains this recital: "It appearing that the only question involved here is the issue of relator's sanity and whether the same may be inquired into on a writ of habeas corpus when neither the minimum nor the maximum of his sentence has expired, and the court having determined the question in the negative * * *" the writ was dismissed. "Any one in custody as an insane person * * * is entitled to a writ of habeas corpus, upon a proper application made by him or some relative or friend in his behalf. Upon the return of such writ, the fact of his insanity * * * shall be inquired into and determined." (Mental Hygiene Law, § 204.)

"Subject to other provisions of law, the board of parole in the division of parole of the executive department shall be charged with the duty of determining what prisoners serving an indeterminate sentence in state prisons * * * may be released on parole and when and under what conditions." (Correction Law, § 210.)

Toward twenty years ago, when the parole system was coming into full flower in this State, the terms for which criminals were to be sentenced were markedly increased. These statutes and those governing the control of alleged criminal mental delinquents are *in pari materia* and should be so construed by the courts. This defendant, convicted of a rather minor felony, assault in the second degree, has been sentenced for what, in former times, would have been cruel and unusual punishment, the maximum being ten years. The justification was that the Parole Board could and would temper the harshness and length of the sentence, if conduct in the prison was good, and grant

a parole during which the convicted person would be at liberty so long as his conduct warranted. The powers to be exercised by the Parole Board were intended to be correlative to those exercised by the court in sentencing. The decision of the Board in this case, as shown by the answer and return quoted, is tantamount to a finding that Marshall would be entitled to be released on parole except for his mental condition, but that he was insane, and, therefore, not a proper subject for release. Broad as are the powers of the Parole Board, it is not given them to determine as to a prisoner's sanity. Under the broad and inclusive definition, Marshall is now " one in custody as an insane person ". He is entitled to a trial on that issue, as guaranteed him by the Constitution and laws of this State and Nation. A trial should be had to determine his sanity. (Civ. Prac. Act, § 1251; *People ex rel. Ledwith* v. *Board of Trustees,* 238 N. Y. 403; *Hoff* v. *State of New York,* 279 N. Y. 490.) Should it be determined that this remedy is not open, this prisoner will be detained for some six and a half years until the maximum of his sentence will have expired, the only authority for the detention being the finding of insanity by a prison physician, unsupported and untested, and adopted by the Parole Board without proof.

The order dismissing the writ should be reversed and the matter remitted and returned to the Special Term for a trial as to the prisoner's mental condition.

CRAPSER, J. (dissenting). I dissent from the opinion of Presiding Justice HILL for reversal. I do not believe that section 204 of the Mental Hygiene Law applies to a case of this kind. This man became insane while serving a sentence and was sent to a hospital for the insane as provided by law.

Nothing can be done for him until the expiration of his sentence in my view of the law at the present time and I therefore vote for the affirmance of the order dismissing the writ.

BLISS, HEFFERNAN and SCHENCK, JJ., concur with HILL, P. J.; CRAPSER, J., dissents in a memorandum.

Order dismissing writ reversed and the matter remitted to the Special Term for a trial as to prisoner's mental condition.