STATE of Missouri, Plaintiff, Respondent,

v.

Janet Loraine GREER, Defendant, Appellant.

No. 22713.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

E. J. Murphy, Butler, for appellant.

Walter W. Pierce, Butler, for respondent.

MAUGHMER, Commissioner.

Patsy Joan Greer, natural mother of Janet Loraine Greer, an infant minor, appeals from a judgment which decreed her daughter to be a "neglected child" under the laws of Missouri, made her a ward of the court, divested the mother of custody and granted custody to the "County Welfare Director of Bates County, Missouri". Such appeal is authorized by Section 211.-410, V.A.M.S. Appellant asserts that the Juvenile judge erred in refusing to quash the petition or information for failure to

state sufficient facts; that he erred in permitting a second petition to be filed after complainant had rested its case, and finally that the judgment "was against the greater weight of the credible evidence". The respondent has filed no brief.

Janet Loraine Greer was born October 17, 1956, out of wedlock, to Patsy Joan Greer, age 26 years. Mrs. Greer had previously been married to one Kenneth Greer, but there had been a divorce and the two children of that marriage were with the father. At the time of Janet's birth and during the pendency of this proceeding, Mrs. Greer and the child resided in the city of Butler, Bates County, Missouri, with her mother, Mrs. Ruth Williamson.

■ On January 25, 1957, the prosecuting attorney of Bates County filed the first information in this case. Stripped to its essentials, this pleading alleged venue, that the "child is suffering from the depravity of its mother" and prayed that she be declared to be a "neglected child". Appended thereto was the official oath of the prosecuting attorney and an affidavit by the sheriff that "said mother has failed and refused to properly care for her child". The proceeding was instituted under Chapter 211, V.A.M.S.—Class 3 and 4 counties. This chapter provides that juvenile hearings shall be conducted in a summary manner, Section 211.380, V.A.M.S., and that its provisions (Section 211.510 V.A.M.S.) "shall be liberally construed" to the end that all children subject to the court's jurisdiction "shall be given such oversight and control as will conduce to the welfare of said children and the best interests of the state". A "neglected child" is defined as "Any child under the age of seventeen years, who is homeless or abandoned, or who habitually begs or receives alms, is found living in any house of ill-fame; or with any vicious or disreputable person, or who is suffering from depravity of its parents, or other person in whose care it may be", Section 211.310, paragraph 2, V.A.M.S. Section 211.390, V.A.M.S., au-

thorizes the Juvenile judge to take and to place custody when the child "shall be adjudged to be neglected * * * or in need of the care or discipline and protection, * * * *". We believe the information as filed meets the requirements of Sections 211.310, supra, and 211.360, V.A.M.S. and, coupled with notice to the mother, gave the Circuit Court of Bates County jurisdiction to hear and determine the issues presented. Appellant's motion to quash was, therefore, properly overruled. State v. Wickliff, Mo. App., 114 S.W.2d 158, loc. cit. 160; State v. Farrell, Mo.App., 237 S.W.2d 492, loc. cit. 495.

■ Upon conclusion of what we shall call the first hearing, which was held on February 11, 1957, the court made the following order: "Cause taken under advisement. Child left in custody of mother and grandmother pending further orders of this Court". Thereafter, on April 5, 1957, the prosecuting attorney, officially and as juvenile officer, filed a second or amended petition. This pleading alleged neglect of the child by the mother and charged that she "has frequented taverns in the area of Butler, Bates County, Missouri, since the date of continuance of the matter". It also requested the court to award custody to Clarence and Bonnie Ruhs, described as intervenors. These intervenors appear to be prospective adoptive parents. Since we have determined the court had jurisdiction when the first information was filed, since final determination was pending, and since juvenile matters are conducted summarily pursuant to statute (Section 211.380, V.A. M.S.; State v. Wickliff, supra), we believe the court did not err in refusing to dismiss this second pleading.

■ We now consider appellant's assertion that "the verdict was against the greater weight of the credible evidence". This third assignment is not aptly stated. There was no verdict, but rather a finding and judgment by the court. Furthermore, we cannot on appeal weigh the evidence and direct judgment where we, from

a reading of the cold record, conclude that the preponderance lies. Rather we examine that record, bearing in mind that deference must be extended, especially on credibility, to the trial court's point of vantage in seeing and hearing the witnesses. Rex v. Rex, Mo.App., 217 S.W.2d 391, loc. cit. 393–394. We also indulge the presumption that the Court's decision was motivated by what it believed was best for the child. We are also mindful that a parent is not to be deprived of care, companionship and responsibility of her child except for grave reasons and such as are authorized by legislative enactments.

In Edwards v. Engledorf, Mo.App., 192 S.W.2d 31, the Springfield Court of Appeals held there is a presumption that the best interest of the child is to be in the custody of a parent. On page 33 of the opinion the court said: "The parents have a right to the custody of their children by nature and by law, which rights should never be denied except for the most cogent reasons, * * ". In Williams v. Williams, 240 Mo.App. 336, 205 S.W.2d 949, 1. c. 953, our own court made this statement: "This concept of the relation of child and parent has led to the well established rule of law that as against the world a parent has the primary right to the custody of his child, and that he is presumed to be fit and qualified for that natural privilege. Whosoever denies him this claim has the burden of proving his unfitness". In 67 C.J.S. Parent and Child, § 12, p. 651, the rule is phrased this way: "In order to justify depriving a parent of the custody of a child in favor of third persons there must be substantial reasons or, as various courts have put it, the reasons must be real, cogent, weighty, strong, powerful, serious, or grave". Continuing and on page 655: "It has been held that there must be compelling or very special reasons for denying a mother the custody of a child of tender age, and that this will be done only under very exceptional or most unusual circumstances".

■ The charge here was that the child was "neglected" because of the depravity of its mother. The evidence, of necessity, was directed toward proving this conclusion. There was neither charge nor evidence of any one of the other statutory prerequisites upon which a decree of "neglected child" could be predicated. "Depravity" in this type of case is defined as being a deficiency of moral sense and rectitude. State v. Farrell, supra. In Knepper v. Knepper, 139 Mo.App. 493, 122 S.W. 1117, loc. cit. 1119, this court said: "A person is depraved when he is generally bad, is wicked in mind and heart, loves evil rather than good; and, though a single act of adultery may be considered strong evidence of depravity, it is not conclusive".

We now summarize the evidence offered in our particular case. At the first hearing, Sheriff Clovis Sivils testified that he saw the mother once in West Town tavern and once in another tavern; that he saw her drinking beer but observed no other misconduct; that he visited the home on different occasions, found the child clean, apparently well fed, and attended by either the mother or grandmother. The grandmother, called by the State, testified that she and the mother alternated in tending the child and that she was always well cared for. Patsy Joan Greer, mother, declared the child had never been left alone, was well fed and had never been sick except for a bad cold, for which Dr. Ronald treated her. She said that she was away from home two days on a trip to Stockton. She admitted that she took the child into a tavern once while waiting for friends who had gone to the grocery store, and that she had dates two or three times each week. Two neighbors testified that the child was receiving adequate and proper care.

At the second hearing two witnesses were called by the State. State Trooper S. A. Wollard said he saw Mrs. Greer at 12:10 a. m. on March 23, 1957, with one Charles Ferguson in an automobile and at the time he arrested Mr. Ferguson for careless and reckless driving. He also saw her on May 19, 1957, at 2:00 a. m. in an automobile. He said that her child was in the car with

her and that he arrested the operator of that automobile for careless and reckless driving. Mrs. Joyce Kenney, Bates County welfare worker, was called. She had prepared a written report on the case, but it was not received in evidence, since she knew no facts and the report was based on pure hearsay. The State stipulated that this child had received proper medical care.

Summarizing, we find here a baby girl, just a few months old, who was concededly adequately housed, fed, clothed and attended, personally and medically. The child's mother visited taverns sometimes but there was no effort to show these places were of ill repute unless the name "tavern" so implies. Her alleged misbehavior there was drinking beer, but not excessively. The child was born out of wedlock, and the mother had dates. The child's mother and grandmother are poor. For some reason not explained, dependency child aid was "cut off".

■ After the first hearing the trial judge properly, we think, left custody with the mother and grandmother. The testimony of Trooper Wollard was the only additional pertinent evidence heard at the second hearing. He testified to no overt act of misbehavior on her part, although her having the baby with her at 2:00 a. m. while apparently out on a date cannot be condoned. We accord full deference to the trial judge on disputed matters of evidence but we believe the testimony offered showed neither depravity of the mother, nor that the child was "neglected" within the purview of our juvenile laws. Although such proceedings are properly conducted in a summary manner and even though it is possible the trial judge possessed extraneous information as to the merits of this controversy, still affirmative evidence of the required facts must appear of record. We cannot and will not on appeal magnify this evidence by surmise or conjecture and thereby deprive a natural mother of the custody of her child and prepare the way to place that child with strangers.

The judgment and decree is reversed. The cause is remanded with directions to set aside the judgment and decree entered May 27, 1957, and return custody of Janet Loraine Greer to her mother Patsy Joan Greer.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.