Alexander Del Giorno, J.
This is a motion for an order dismissing the causes of action set forth in the claim upon the grounds (1) that the court does not have jurisdiction of the subject matter, (2) that there is an existing final judgment or decree of a court of competent jurisdiction rendered upon the merits, determining the same cause of action between the parties and (3) that the claim does not state facts sufficient to constitute a cause of action pursuant to the Civil Practice Law and Rules (3211, subd. [a], pars. 2, 5, 7).
The claim alleges the State was negligent “ in the unlawful and wrongful detention, the false imprisonment, and the unjust and wrongful diagnosis of the sanity of the claimant at Matteawan State Hospital ”; that claimant’s imprisonment and incarceration were ‘ ‘ based upon an improper, wrongful, cursory, sketchy, flimsy and negligent examination and diagnosis ”; that the imprisonment was wrongful and that claimant should have been released therefrom had the State ‘1 used proper diligence, proper facilities and investigative means ” at its disposal; that claimant was confined to the hospital on October 9, 1968 and was released on September 17, 1962; that the State failed to provide claimant with qualified psychiatrists, proper and adequate facilities, Spanish-speaking interpreters and other personnel required so as properly to examine and diagnose the mental illness of claimant; that the State psychiatrists were guilty of malpractice in failing properly to diagnose claimant’s mental condition and in being grossly negligent. Damages are claimed in the sum of $1,000,000.
Claimant had been arraigned in the Court of Special Sessions on July 15, 1958 on the charges of assault and violation of section 1897 of the Penal Law, and was committed to Bellevue Hospital for examination and report. Two qualified psychiatrists having reported that claimant was mentally incompetent, he was committed to Mattewan State Hospital until such time *701 as he might become mentally competent, by order of Ameróse J. Haddock, Judge of the Court of Special Sessions, dated October 9,1958.
A writ of habeas corpus, based upon the petition of claimant, was granted on May 5, 1961, returnable on June 12, 1961 at Supreme Court, County of Dutchess. The return to this writ stated that it was the opinion of John F. McNeil, M. D., Superintendent of the hospital, that claimant was then in such a state of insanity, idiocy or imbecility as to be unable to understand the nature of the charge pending against him and to make his defense thereto. By order of Hon. James D. Hopkins, Justice of the Supreme Court, dated June 12,1961 which recited that claimant had been heard in person and testimony taken, the writ was dismissed. There was no appeal from the order dismissing the writ.
A second writ of habeas corpus, based upon the petition of claimant was granted on June 22, 1961, returnable on July 7, 1961. The return to this writ indicated that the opinion of John F. McNeil, M. D. as to the mental incompetence of claimant was the same as it had been at the time of the return to the first writ. By order of Hon. Hugh S. Coyle, Justice of the Supreme Court, dated July 7, 1961, which recited that claimant had been heard in person and testimony taken, the writ was dismissed. No appeal was taken from this order.
A further writ of habeas corpus, based upon the petition of claimant was granted on October 5, 1961, returnable October 23, 1961. The return to this writ alleged that, in the opinion of the Superintendent of the hospital, claimant was still in a state of insanity. By order of Hon. Leonard J. Supple, Justice of the Supreme Court, dated October 23, 1961, which recited that claimant had been heard in person and testimony taken, the writ was dismissed. No appeal was taken from the order of dismissal.
The claimant was not represented by counsel at any of the three habeas corpus proceedings. The present attorneys were retained by claimant’s family on or about June 19,1962. Counsel interviewed claimant at the hospital on June 26, 1962. Because certain facts are claimed by claimant’s attorneys to bear upon the existing situation, they will be set forth herein. At the time of his interview with counsel, claimant related what counsel describes as a “seemingly strange and bizarre story”. He had lived with one Carmen Ortiz in a common-law relationship for about seven years, two children having been born of the union. -Sometime prior to 1958, claimant brought an acquaintance, Boberto Castro to live with them. Castro alienated the *702 affections of Carmen, and upon being ordered to leave the household, did so, but took Carmen with him. Shortly before tbi a time, Castro had taunted claimant about his lack of masculinity. Castro then cut a blood vessel in his own arm, allowed the blood to flow into a glass of beer, then drank the combination, simultaneously boasting of his virility. Despondent over the turn events had taken, claimant engaged in an altercation with Castro and Carmen, was accused of assaulting Carmen, and jailed. Upon his release, he went back and was accused by Carmen of another assault, was arrested and sent to Bellevue.
To the doctors at Bellevue, he related the same story in essence, denying his guilt of the pending charges.
After the contested sanity hearing in October, 1958, claimant was committed to-Matteawan, to be returned to the jurisdiction of the court upon .the recovery of his sanity.
At the time of visiting the hospital, counsel discussed with the Assistant Director of the hospital the mental condition of claimant. The doctor stated that although claimant was well-behaved and rational, the story he had told indicated a paranoid personality. Counsel then contracted Carmen Ortiz, whose affidavit is attached to the papers herein. She verifies the truth of the story told by claimant. In August, 1962, counsel was informed by the Superintendent of the hospital that claimant’s delusional ideas must prevent his release. In September, 196-2, claimant was released from the hospital.
Claimant concedes that the commitment was made by virtue of the order of the then Court of Special Sessions. He does not raise any question of jurisdiction of the court or of invalidity of the order on its face or of its validity at the time of its receipt by the officials of Matteawan State Hospital. He contends, however, ¡that the substance of his claim rests upon malpractice and negligence subsequent to his commitment to the hospital, and that once the story told by claimant to the authorities was verified by Carmen Ortiz, in August, 1962, there no longer existed a basis for a finding of incompetency by the psychiatrists.
Where a mentally ill person is committed, his detention is authorized only during the continuance of the condition. If he recovers while under lawful commitment, he may apply for a writ of habeas corpus to secure his release. If he establishes his mental soundness he will be released. (People ex rel. Ledwith v. Board of Trustees of Bellevue, 238 N. Y. 403; People ex rel. Canizio v. Kings County Hosp., 10 Misc 2d 40.) His release will be refused, however, where the evidence indicates that the relator requires further care and treatment (People *703 ex rel. Anonymous v. La Burt, 14 A D 2d 560, mot. for Iv. to opp. den. 14 A D 2d 700). The presumption of fact is that the condition of insanity continues to the present time, with the result that the burden of proving sanity is upon the person seeking release by habeas corpus after commitment to a State hospital for the criminally insane. Commitment for an indefinite time is legal where the statute makes provision for the mentally ill person to contest, by proof of his sanity, the legality of his confinement after admission. (People ex rel. Anonymous, supra; Matter of Coates, 9 N Y 2d 242.)
The purpose of the institution by the claimant in person of the three habeas corpus proceedings was to obtain a judicial determination on the return days thereof of the sanity of claimant at such times. In each instance the court found that claimant had not recovered his sanity. On this motion, the court holds that as of October 23, 1961, the date of the order made after the third habeas corpus proceeding, there was an existing final judgment or decree of a court of competent jurisdiction rendered on the merits, determining the same cause of action between the parties, but only on the issue of the then sanity of claimant up to such time. Questions as to the medical, rehabilitative and custodial care given claimant while an inmate of the hospital, however, were not and could not properly have been within the scope of the habeas corpus proceedings, and the orders entered in such proceedings were not necessarily determinative of such matters. These remain questions of fact which can be decided only upon a trial of the claim. It follows, therefore, that the orders in the habeas corpus proceedings constitute a bar to the present claim only so far as they determine, up to October 23, 1961, that the claimant was then mentally incompetent. The basic issue of sanity at such time is the same in the present claim as it was in the habeas corpus proceedings (Hull v. Hull, 225 N. Y. 342; Marsh v. Masterton, 101 N. Y. 401). This issue, having been adjudicated in the former proceedings, may not be relitigated in the instant claim (Nastasi v. State of New York, 275 App. Div. 524, affd. 300 N. Y. 473).
Further, the incarceration of claimant continued from October 23, 1961, the date of the order in the final habeas corpus proceeding, through September 17, 1962, at which time he was released from the hospital. Claimant is entitled to a trial on the allegations of his claim for this period.
Accordingly, the motion is denied insofar as it seeks an order dismissing the causes of action set forth in the claim upon the ground that the court does not have jurisdiction of the subject matter; granted on the issue of res judicata only to *704 the extent that claimant was determined to be mentally incompetent .from the date of his commitment to October 23, 1961; and denied insofar as it seeks an order dismissing the claim upon the ground that the claim does not state facts sufficient to constitute a cause of action pursuant to 3211 (subd. [a], par. 2, 5, 7) of the Civil Practice Law and Rules.