Ralph E. Cory, J.
The facts of this petition are as follows: (Upon information and belief), said child, Katherine J., is neglected in that (under Family Ct. Act, § 1012), “ A sibling in the same home was injured and confined to Richmond Memorial Hospital suffering from subdural hematoma. There is grave danger that the newborn baby, if returned to the respondent parents will be neglected, as was the sibling. ’ ’
The child, the subject matter of this petition, was born on October 28, 1971 and was first remanded to St. Vincent’s Hospital on Staten Island, New York, and was subsequently remanded to the Commissioner of Social Services when medically dischargeable, which occurred on February 2,1971, pending a hearing on the neglect petition.
The child was never returned home from the hospital after its birth to live with its mother and father. Both parents deny the allegations in the petition that the newborn baby if returned to the respondent parents will be maltreated or neglected, and demand the return of the child to them.
The Corporation Counsel in seeking remand of the child to the Commissioner of Social Services states that another sibling was injured in the above home and confined to a hospital suffering from a subdural hematoma. He contends that the newborn baby will be in imminent danger under subdivision (f) of section 1012 of the Family Court Act, which recites that a neglected child could be one whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired.
*49 In neglect proceedings, it is the court’s duty to determine whether, despite any past deficiency, children at the time of the hearing are suffering or likely to suffer from neglect. (Matter of Desiree T., 64 Misc 2d 28.)
The record which is important and relevant in this case reveals that both parents admitted to neglect of two previous children and, at a subsequent dispositional hearing, these children were placed with the Commissioner of Social Services and not permitted to return to their parents. The oldest child was abused in 1970 and the second child in 1971 necessitating an operation to save the child’s life.
At the dispositional hearing held on March 31,1972, the court in its decision noted that the father was an extremely disturbed man as verified by medical and psychiatric and social history reports and that the mother was a very immature, silly and irresponsible person. Despite psychiatric reports and recommendations to the contrary, she and her husband reconciled, jeopardizing the safety and welfare of their children. The court in its decision further noted that both parents need therapy and an opportunity to establish a feeling of responsibility through work and further education. This cannot be accomplished at present if they have children to care for jointly or separately. Both parties lack the inner strength necessary for caring for the children because of their disturbed backgrounds in not receiving a feeling of love, belonging and sexual identity, typical in cases of this nature.
In any hearing under article 10 of the Family Court Act (Child Protective Proceedings), proof of the abuse or neglect of one child shall be admissible evidence on the proof or neglect of any other child. (Family Ct. Act, § 1046, subd. [a], par. [i].)
It is therefore very relevant that the case history of this family be carefully scrutinized, particularly in view of previous admission of neglect and dispositional hearing on March 31,1972 which denied custody of the respondents’ two other children to them for the reasons aforesaid.
March 31, 1972 when this dispositional hearing was made, is only a few months ago. In the meantime, the respondent mother is now five months’ pregnant, another factor to be seriously considered in deciding whether or not the child of the petition shall be returned to her.
Attorney for the respondent argues vehemently that to deny the parents the right to have the child returned to them is a violation of their basic constitutional rights and a violation of due process. He argues, and not without logic or reason, that there *50 -is not one shred or scintilla of evidence to show that the child under the instant petition was ever neglected by the parents since the parents never had care, custody and control of the child. Except for the biological birth of the baby by the mother at the hospital, the child has never been with either parent.
The question then becomes whether or not the basic constitutional rights of the parent supersede the best interests, welfare and safety of the child.
Parental custody is always preferable but the law properly provides for intervention by society when parental care is deemed dangerously faulty or insufficient. But the question is one of degree and the law must be flexible enough so that the State may intrude upon the sanctity of the family only in the most justifiable circumstances. (Paulsen, The Legal Framework for Child Protection, 66 Col. L. Rev., 679 ; Family Ct. Act, art. 10.)
The welfare of the child is the object in neglect cases; inquiry is addressed as to whether the child’s welfare requires her removal from the home. (Matter of Blaine, 54 Misc 2d 248.)
Section 1012 (subd. [f], par. [i], cl. [B]) foresaw the dangers in the instant neglect petition, that the newborn child would be in imminent danger because of assaultive parents by providing the words “or a substantial risk thereof” in describing parents who fail to exercise a minimum degree of care. The legislative intent here is clear to gu,ard against a child not only whose physical, mental or emotional condition has been impaired, but “is in imminent danger of becoming impaired”. (Family Ct. Act, § 1012, subd. [f], par. [i].)
There has already been a finding of neglect against the respondent parents on children Darlene and Candida on an original abuse petition and a dispositional hearing denying the return of these children to their parents. The record is therefore sufficient to make the cdnclusion inescapable that the newborn female baby (Katherine) is likely to suffer serious harm from improper guardianship. There is ample proof in the record that both parents are ignorant of proper child care and supervision and serious injuries have occurred to the children as a direct result of the respondents’ acts of omission and commission. These are warning signs that this court or any court faced with similar problems could not safely ignore.
Section 1046 (subd. [a], par. [i]) of the Family Court Act states that proof of the abuse or neglect of one child shall be admissible evidence on the issue of neglect o# abuse of any other child of, or the legal responsibility of, the respondent. Experi *51 ence has shown that a parent who abuses one of his children is likely to abuse his other children. This has become a rule of evidence in child protective proceedings. Accordingly, when an abused child has been removed by a Family Court order from its parents, a social welfare worker or other proper petitioner may file a neglect petition against such parent for the removal of his other children, alleging that such parent is likely to abuse them too. Such petition will not be dismissed as legally insufficient. (Matter of Abeena H., 64 Misc 2d 965; Matter of Fred S., 66 Misc 2d 683.)
There is a far more dangerous pattern of neglect established in the instant application than in Matter of Abeena H. (supra). Already faced with one finding of neglect plus a dispositional hearing that absolutely prohibited the return of two other children to their parents, there is no doubt in the court’s mind that the denial of this application to have the newborn female child return to live with her parents at home is not only necessary, proper and legal but imperative under all the facts and circumstances. (Matter of Fred S., supra.)
In neglect proceedings, the court’s duty is to determine whether, despite any past deficiency, children are at the time of the hearing suffering or likely to suffer from neglect. It is the function of the trial court to determine whether neglect exists. (Matter of Vulon, 56 Misc 2d 19.)
In child protective proceedings, by logical extension of the doctrine, it is also the function of the trial court to determine not only whether neglect or far more serious child abuse exists, but that it is likely to exist. The court sitting as parens patriae cannot be limited in this type of proceeding to conditions already existing or which have happened in the past. Indeed, this court could not be fulfilling its proper function if it limited its necessary broad sweeping horizon of child health, safety and welfare to the past and present situation only when the warning flags from the storms of neglect are still flying, and, to borrow a familiar saying from another branch of the law, there is abundant evidence of a “ clear and present danger ’ ’ to children. (Schenck v. United States, 249 U. S. 47, 52; Matter of Fred S., 66 Misc 2d 683, 697, 698, supra.)
Acting in the best interests and welfare of children is not a denial of due process to the parents. Rather and what is more important, it is the highest form of due process for neglected children and those likely to become so because of assaultive tendencies of parents already established, including mistreatment of children in the form of physical assault and acts of omission *52 involving improper guardianship and supervision. Accordingly, on the basis of all of the foregoing, there is a finding of neglect under the instant petition under section 1028 of the Family Court Act, after a hearing. This is based on the exercise of discretion of the Family Court as parens patriae to avoid an imminent risk to the child’s life or health in view of the findings on the other petition of child abuse and neglect against the other children as well as the dispositional hearing which strongly recommended against the return of the other children to the parents and which was made an order of this court. (Family Ct. Act, § 1028, subd. [b].)
The Probation Department is ordered to conduct immediately an up-to-date, complete and thorough predispositional hearing investigation since the last dispositional hearing held by this court on March 31,1972.
The child Katherine, subject of this petition, is continued on remand as heretofore to the Commissioner of Social Services until the date of the dispositional hearing, August 23,1972.