Ralph E. Cory, J.
The instant petition arose on September 27, 1972 when the infant child, Kristina Lynn subject of this case was three days old, born in Richmond Memorial Hospital on September 24, 1972. The petition was brought by the Commissioner of Social Services who alleged that: ‘ ‘ there is a grave danger that if the newborn infant, Kristina Lynn is returned to the respondent parents, she will be neglected in that the respondent parents did admit to improper supervision and failure to exercise a minimum degree of care on previous neglect petitions, where there was a finding of neglect. One of the children, Candida, was hospitalized suffering from subdural hematoma due to maltreatment. On another .separate petition * * * Katherine was found to be a neglected child due to the court’s findings of neglect on the other two children. ” (See Matter of Katherine J., 71 Misc 2d 47.)
The Commissioner of Social Services acted under section 1012 of the Family Court Act because the previous children had been neglected and their physical, mental or emotional condition impaired and thus the child of the instant petition is in imminent danger of suffering the same fate. After full fact-finding and dispositional hearings, the court placed all previous children with the Commissioner of Social Services.
*685 This child, Kristina Lynn, the subject of the instant petition, however, had never been released from the hospital since her birth and had been remanded to the hospital until a hearing could be held on the neglect petition now before the court in view of the previous findings of neglect on the other children and to determine whether it would be safe to return said child to her parents.
Two witnesses testified for the petitioner, the Bureau of Child Welfare caseworker who was now handling the case and a social worker in training as a therapist but not yet licensed who counselled the respondent parents on a regular basis for the past several months. The caseworker had been substituted for the petitioner (Commissioner of Social Services) on motion of the Corporation Counsel, with no objection by the attorney for the respondents.
The petitioner (B.C.W. caseworker) testified that she never went to the home of the respondent parents and that her only knowledge of the case came from the file compiled on the respondents and which had been handed to her by the previous caseworker. Although said file may have been detailed and documented as to previous case histories of other children of the respondents and the respondents themselves, it is no substitute for actual interviews, inspection of premises of the respondents and other important social and investigative procedures on which a finding of possible neglect or of a child being in imminent danger, especially a newborn child, if returned to its parents.
The testimony of the social worker was incredible. In training for a therapist license, but only in this case as a psychiatric social worker, she stated flatly after many interviews with the respondents that no evaluation of them was possible nor could she make a recommendation as to whether neglect would ensue if this child was returned to its parents.
The social worker also testified that the respondents viewed her with suspicion and fear but that this was a normal reaction of such persons undergoing this type of treatment. The record was also undisputed that the respondents attended voluntarily every session with the social worker except a few due to illnesses.
This testimony of the petitioner’s witnesses failed by a wide margin to sustain the burden of proof of the petitioner in child neglect proceedings by preponderance of relevant, competent and material evidence. (Matter of Young, 50 Misc 2d 271; Family Ct. Act, § 1046, subd. [b].) No prima facie case of neglect or possible neglect where the child was in imminent danger of having its physical, mental or emotional condition in imminent danger of being impaired, has been proven. (Matter of Young, *686 supra; Family Ct. Act, § 1012.) Although proof of the abuse or neglect of one child shall be admissible evidence of the abuse or neglect of any other child, it still must be proven at a fact-finding hearing. Such findings of child neglect on other children are not per se findings of neglect on another child who has not yet been neglected but only is in imminent danger of neglect.
In neglect proceedings, the court’s duty is to determine whether despite any past deficiency, children at the time of the hearing are likely to suffer from neglect. (Matter of Desiree, 64 Misc 2d 28; Matter of Vulon, 56 Misc 2d 19.)
The court should exercise its jurisdiction to interfere with parental guardianship reluctantly and only upon strong and convincing proof of unfitness on the part of parent or material benefit to child.
There is no such strong and convincing evidence in this case to support the allegations of the petitioner.
Parental custody is always preferable but the law properly provides for intervention by society when parental care is deemed dangerously faulty or insufficient. But the question is one of degree and the law must be flexible enough so that the State may intrude upon the sanctity of the family only in the most justifiable circumstances. (Family Ct. Act, art. 10, added by L. 1970, ch. 962; Paulsen, “ The Legal Framework for Child Protection ”, 66 Col. L. Bev. 679 [1966].)
This court is not unmindful of the fact that both respondent parents admitted to neglect of two previous children and at a subsequent dispositional hearing, they were placed with the Commissioner of Social Services and not permitted to return to their parents. The older child was abused in 1970 and the second child in 1971 necessitating an operation to save the child’s life.
The court is mindful of its own decision in Matter of Katherine J. (71 Misc 2d 47, supra), a case very similar to the instant petition. Katherine was bom to the respondents, remanded to the hospital and then remanded to the Commissioner of Social Services when medically dischargeable on February 2, 1971. Like the instant petition, Katherine never returned home from the hospital after her birth to live with her mother and father. The Commissioner of Social Services was able to show that there would be a likelihood of imminent risk to the child’s health and life in view of the findings on the other petition of child abuse and neglect against the other children and a strong recommendation by the Probation Department in a dispositional hearing. Furthermore, the respondents were completely disorganized as *687 a family unit and totally unprepared at that time (June 20, 1972) to properly care for Katherine.
The testimony was unrebutted in the instant petition, however, that the parents had stabilized themselves, had found a 5%-room apartment, were living apart from in-laws who caused some of the previous difficulty and that the respondent father was presently employed as a school custodian at $150 per week and had a fine record from his employer.
On the basis of all of the foregoing, the petitioner has not shown that the best interests, welfare and safety of the child supersede the basic constitutional rights of the parents to have their own child at home with them if medically dischargeable.
This petition must be dismissed as legally insufficient.