Nanette Dembitz, J.
In this parental neglect and child abuse proceeding under the Family Court Act, the issue is whether a mother’s recent and severe maltreatment of her previous child is sufficient basis for a decision that her newborn baby is likely also to suffer from her neglect or abuse.
The Family Court has authority to determine whether a child is in substantial danger of parental neglect or abuse, in order to prevent the possibility of his irremediable damage or destruction before the actual injurious acts come to light (see Family Ct. Act, § 1012, subds. [e], [f]). The Family Court Act further provides that “ proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent.” (§ 1046, subd. [a], par. [i].)
Respondent’s attorney, while recognizing the validity of this provision on admissibility,[1] challenges the weight attributable to a mother’s abuse of one child in a proceeding for the protection of another.[2] In view of the recency, repetitiveness, and character of respondent’s abuse of her first child, Monique (described in section I, below), the court concludes on the basis of established legal principles that the evidence thereof is sufficient to prove a prima facie case of a substantial risk to her second infant, Kenya (section II, below). Accordingly, absent any refutation by respondent, the court enters a ‘ ‘ finding of fact ” (Family Ct. Act, § 1044), asserts authority over respondent mother in relation to Kenya, continues Kenya in repondent’s custody while a social investigation of her care is undertaken, and refers respondent to the court clinic for psychotherapy in accordance with the court psychiatrist’s previous recommendation.[3]
*608 I. EVIDENCE AS TO PRICE CHILD
At the time of respondent mother’s first hearing on allegations of child neglect and abuse, held on May 4, 1972, she had only one child, Monique. The uncontroverted and entirely convincing evidence at that trial established that in the period from January, 1971, when respondent mother assumed Monique’s care, until May, 1971, when Monique was removed-to Metropolitan Hospital due to a teacher’s observation of injuries inflicted by respondent mother, respondent beat Monique brutually and daily, causing serious lesions and bruises over her entire body, including a severely blackened and swollen eye (caused by respondent hitting her in the eye with a belt buckle). According to a psychiatric examination, Monique suffered acute psychic distress as well as physical, from respondent’s abuse. The proof further established that Monique was in no way a difficult child to control but on the contrary was amenable, attractive and appealing, and that respondent’s reply to questions as to her abuse of Monique was that Monique was her child and she could therefore treat her as she pleased.
The child now in controversy, Kenya, was born in August, 1972, three and one-half months after the hearing as to respondent’s abuse of her first child (who had been placed with her grandparents after her discharge from the hospital). From birth Kenya was in the care of respondent mother; and at the hearing in regard to her when she was seven months old, there was no evidence that either neglect or abuse had occurred.
Since the only basis for the court’s authority or investigation as to Kenya is the respondent’s abuse of her prior child, her attorney’s contention that such abuse is insufficient to establish a prima facie case herein, means that it must be totally ignored in relation to Kenya — that there can be no intervention, concern or inquiry with respect to respondent’s care of Kenya. The court’s rejection of respondent’s argument is supported by general principles of evidence and procedure as well as by policy considerations.
II. LEGAL PRINCIPLES SUPPORTING DETERMINATION
In a variety of civil proceedings, “ conditions once shown to exist are presumed to continue ”, (Larsen Baking Co. v. City of New York, 30 A D 2d 400, 406 [2d Dept.], affd. 24 N Y 2d 1036.) Applying this customary presumption of continuance to individual conduct, [1] ‘ reasonable cause to believe that the defendant will continue the wrong * * * may, of course, be inferred from the nature and character of the wrong”. *609 (Jacquard Knitting Mach. Co. v. Ordnance Gauge Co., 108 F. Supp. 59, 68 [E. D. Pa., 1952].) And see for a leading exposition of this doctrine, Swift & Co. v. United States (276 U. S. 311.) The presumption of the likelihood of respondent’s again engaging in child abuse, is a necessary inference from the nature of her acts and her expressed attitude towards them.
Respondent mother’s severe and unremitting abuse of Monique was indicative of harshly punitive, unrestrained impulses; of the use of a defenseless child as outlet and victim. The abuse was recent and even more recent was respondent’s attitude of possessory omnipotence: “ I can treat my child as I wish.” The common-sense view that there is a likelihood of respondent’s visiting this attitude and the resultant abuse on another child, is corroborated by research in the field of child abuse. For, studies indicate that child abuse is generally the result of a deep-seated, pervasive psychological conflict,[4] and thus is likely to be inflicted on another child when the first-abused child is removed from the home. As to the presumption of a continuance of recently manifested psychic difficulties (see Rosario v. State of New York, 42 Misc 2d 699, 703 [Ct. of Claims]; cf. Carter v. Beckwith, 128 N. Y. 312, 316; Quarterman v. Quarterman, 179 Misc. 759, 760 [Sup. Ct., N. Y. County]).
In sum, the presumption of a substantial risk of respondent’s abusing Kenya, is valid, for there is “‘a rational connection between the facts proved and the fact presumed. ’ ’ ’ (Leary v. United States, 395 U. S. 6, 33.)
Necessarily, and in accordance with customary procedure, respondent bears the burden of coming forward with evidence to refute this presumption of danger if she is to avoid a determination against her. When the courts rely on the presumption of the continuance of a type of conduct, the burden is on the defendant to ‘ ‘ demonstrate that ‘ there is no reasonable expectation that the wrong will be repeated. ’ The burden is a heavy one.” (United States v. Grant Co., 345 U. S. 629, 633.) To same effect, see United States v. Oregon Med. Soc. (343 U. S. 326, 333). Even in a criminal case, there may “ be justifying reason to shift the burden either because knowledge of the facts is peculiar to the defendant or the onus is based on probabilities of wrongdoing.” (People v. Laietta, 30 N Y 2d 68, 75.) See, also, Leland v. Oregon (343 U. S. 790, 800), as to a criminal defendant’s burden of proof regarding his mental condition.
*610 Here it was open to respondent to prove that the suffering and damage she inflicted on her first child was due to a temporary psychological condition, to particular circumstances, or even to particular characteristics of the child. Any such ground for showing that despite her abuse of her first child she presents no danger to Kenya, would be within her “ peculiar ” knowledge.
It is true, as respondent argues, that the ultimate facts to- be proved in a neglect or abuse proceeding relate to a child’s present, rather than past, predicament (see Matter of Vulon, 56 Misc 2d 19 [Family Ct., Bronx County]). But, to paraphrase Justice Oliver Wendell Holmes, the past may be prologue — the question.is whether past acts are indicative of present peril. In neglect or abuse actions, like injunction proceedings (as distinguished from ¡suits for damages or criminal cases), the aim is to determine on the basis of past acts whether there is a continuing danger- and how ‘ ‘ to prevent future wrong ’ ’. (Swift & Co. v. United States, 276 U. S. 311, 326, supra.)
Because of increasing public concern about the serious harm inflicted on children by parents, the Legislature has amended the Family Court Act several times in the past few years to strengthen the court’s preventive and protective function.[5] Cases like the instant one of maltreatment of -a prior child present one of the few situations in which this court, and social agencies at its instance, can be alerted to take before-the-fact protective measures. The importance of court intervention in such cases even though no damage to the second infant is manifest, lies in the fact that neglect or abuse by a parent with a propensity toward it is often triggered by the child’s growth.[6]
To foreclose this court from investigating respondent’s treatment of Kenya and from further intervention if proven necessary, is to impose an inhumane and intolerable limitation on this court’s legislatively-assigned duty of protecting helpless children. Accordingly, the court concludes that there is , a substantial risk of respondent’s abuse or neglect of her child, Kenya, and orders a social investigation of respondent’s home and relationship with the child as well as a referral of respondent for psychotherapy.

. For admissions of evidence pursuant to provision, see Matter of Abeena H., 64 Misc 2d 965 (Family Ct., Kings County, Judge Zukerhan); Matter of Katharine J., 71 Misc 2d 47 (Family Ct., Richmond County, Judge Cory); Matter of Santos, 71 Misc 2d 789 (Family Ct., N. Y. County, Judge Kram) .

. In Matter of Thaxton, 220 So. 2d 184, 186 (Ct. App., La., 1st Cir., 1969), authority was exercised over the care of a second child on the sole basis of abuse inflicted on the first. Research has not revealed any other decisions on this issue.

. The child’s removal from her mother can be ordered only if the need for such a drastic measure is established in a separate- hearing after the social investigation (see Family Ct. Act., §§ 1045, 1046, subd. [c]; §§ 1047, 1052, as to'dispositional hearings and orders).

. See Heifer and Kempe, The Battered Child (Univ. of Chicago, 1968) pp. 109-111. The likelihood of abuse is increased by the fact that Kenya is the same sex as respondent and as the previously abused child. Ibid, p. 32.

. See L. 1970, ch. 962, § 9; L. 1972, ch. 1015; Paulsen, The Legal Framework for Child Protection, 66 Col. L. Rev. 679.

. See Heifer and Kempe, cited note 4, at pp. 130-131. See Dembitz, Child Abuse and the Law, 24 The Record (Assn, of Bar of City of N. Y., Dec., 1969) 613, 613-614, 621-622.