**In re A. A., Jr., a juvenile.**

**No. 27710.**

Missouri Court of Appeals,
Kansas City District.

Feb. 9, 1976.

James L. McMullin, Hill, McMullin & Wilson, Kansas City, Mo., for appellant.

Cheryle Micinski, Kansas City, Mo., for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from order and judgment that A. A. Jr., was in need of care and services (treatment) under jurisdiction of the court and which committed him to the custody of the State Division of Family Services for foster home placement. §§ 211.261, 211.-031, 211.181, RSMo 1969, V.A.M.S. The question is whether prior abuse of another child presents a *prima facie* case of danger to a sibling in the same circumstances to justify intervention by the court for removal of such child from his environment. Affirmed.

On October 25, 1974, a petition "in the Interest of A. A., Jr.," a male, age one year, in legal custody of his parents, A. A. A. and J. M. A., 488 Highland, Kansas City, Missouri, was filed by the juvenile officer which alleged, as amended December 4, 1974: "The environment of said child is injurious to his welfare in that said child's natural father has been convicted of homicide of a sibling of this child and is presently out on bond pending an appeal of his conviction. Due to the present status of said child's father, it is felt that this environment is emotionally unstable and dangerous for this child to reside in."

The child was taken into custody October 25, 1974, and was detained in custody in foster family care under orders of the court until hearing on the petition December 4, 1974.

Appearances at the hearing were: the child in person with his duly appointed guardian ad litem, an attorney; the parents in person with their attorney; and the juvenile officer by his attorney.

It was stipulated "that A. A., Sr., has been convicted of murder in the second degree of a sibling of * * * A. A., Jr. He is presently on bond pending appeal." The allegations of the petition were otherwise denied, a motion to dismiss was overruled, and the hearing proceeded for receipt of evidence.

Rosalyn Wilson, a Social Service worker with the Division of Family Services, investigated the A. family. Mr. A. told her that he was separated from his wife at the time the sibling, C. A., was killed; that he had visited A. Jr., when the mother permitted him, and had done so since C.'s death. Mrs. A. also told her of the separation and indicated that she would continue to allow Mr. A. in her home and to see the child in the future.

Juvenile officer's Exhibit 1, medical records of C. A. at Kansas City College of Osteopathic Medicine, was identified by William R. Bonner, D. O., who, with Dennis J. Hey, D. O., supervised its preparation. C. was seen in the emergency room May 9, 1974, 8:10 p. m., attended by Drs. Bonner and Hey. She was a 2-year-old female in a comatose state, brought to the hospital by

ambulance. She had no blood pressure and was without spontaneous respiration or heartbeat. She exhibited bilateral periorbital bruises, bruises bilaterally over the zygomatic arches and mastoidal area. Her chest wall was bruised bilaterally; her back had abrasions and bruises. She had bruises in the epigastric and suprapubic areas. Her upper and lower extremities showed multiple bruises and abrasions; edema was present in her left hand. Her buttocks were bruised bilaterally; there was a serosanguineous discharge in the vaginal vault. Lifesaving measures were attempted, all of which failed, and she was pronounced dead at 8:50 p. m., May 9, 1974. The mother related two stories or versions of what happened. The first was that the child fell off her bicycle and down some steps; the second was that the child and a girl child neighbor were fighting and, after entering the house, fell down and stopped breathing.

In Doctor Bonner's opinion, C.'s bruises and abrasions "were traumatic in origin but not of an accidental cause * * *. They looked like a beating."

The juvenile officer rested; and, after a second unavailing motion to dismiss, Mrs. A. testified.

J. A., mother of C. A., deceased, and A. A., Jr., age 13 months, was eighteen years old. She stated that A. A., Sr., was the father of C. and A., Jr., and acknowledged that the father had been convicted of the homicide of C. At the time A., Jr., was taken into custody, her husband had not been living with her and was living with his mother, Jessie Hueigh, at 5012 East 41st Street. She acknowledged that A., Sr., had visited his son since C.'s death, "* * * occasionally, and when he did visit, it would be a friend or somebody or my brother would be over at the time he visited him. We have a friend, you know, that comes up, you know, when he comes to see the baby, and my brother comes over sometimes when he comes to see him." Before C.'s death, A., Sr., "came mostly every day, say two days out of the week, something like that," without any other person present. Mrs. A.

also acknowledged that she told Rosalyn Wilson, the caseworker, that she would let Mr. A. continue to visit in her home.

The court sustained the petition because "the environment of the child is dangerous for the child to reside in. It's undisputed about the conviction, even though it is on appeal, and * * * the deceased child also was a young infant who was in the custody of the mother at the time of the killing; and * * * the child A., Jr., is in need of the care and treatment and services of this court." The court then heard evidence on disposition, which, "in compliance with instructions of appellants' attorney," was not transcribed. The order and judgment previously described followed:

"* * * the Court finds that said A. A., Jr., is a child under the age of 17 years and is in need of the care and services of the court and that the court has jurisdiction over said child under the provisions of Section 211.031, R.S.Mo. (1969) * * * in that the allegations stated in the petition are found to be true, and the Court hereby sustains the petition herein as amended.

"Wherefore it is ordered, adjudged and decreed by the Court that said child, A. A., Jr. be and he is committed to the custody of the State * * * until further order of the Court."

Appellant J. A., mother of A. A., Jr., contends the evidence was insufficient to show that the environment of the child was injurious to his welfare. She argues that evidence that the father killed his son's sibling and is free on bond is insufficient to take the child from his mother. In support, she asserts there was no evidence that the child's environment while living with her "separate from the father" was injurious to the child.

Section 211.031, supra, provides that "the juvenile court shall have exclusive original jurisdiction in proceedings: (1) Involving any child who may be within the county who is alleged to be in need of care and treatment because: * * * (c) The behav-

ior, environment or associations of the child are injurious to his welfare * * *."

In a proceeding of this nature, the consideration which overrides all others is the welfare of the child; and, in this case, the sole question is whether the environment of the child was injurious to his welfare to justify his removal from the parents' custody into the protection of the court. *In re D— L— W—*, 530 S.W.2d 388 (Mo.App. 1975).

The difficulty in appellant's contention and argument is that it overlooks the evidence which shows that the father who has been convicted of the homicide of his daughter, C., is permitted by her to visit with the deceased child's sibling, A., Jr., and that the same situation existed prior to and at the time C. was killed. The nature and extent of the injuries sustained by C. at the hands of her father is evidence which sustains the court's findings that an environment which continues to admit such a person is dangerous to another child of tender years there residing, is injurious to such child's welfare, and justifies intervention by the court by assuming jurisdiction of such child. *In re D— L— W—* supra. See also *In re M— P— S—*, 342 S.W.2d 277, 282[5] (Mo.App.1961), recognizing that the laudable purpose of such a proceeding is to safeguard and protect children.

The proposition that prior abuse of another child is a *prima facie* case of imminent danger to a sibling in the same circumstances to justify intervention by the court for removal of such child from his environment has been recognized and sustained in other jurisdictions. See, e. g., *In re State ex rel. Thaxton,* 220 So.2d 184 (La.App.1969); *In re H.,* 64 Misc.2d 965, 316 N.Y.S.2d 16 (Family Court 1970); *In re G.,* 74 Misc.2d 606, 344 N.Y.S.2d 422 (Family Court 1973); and cf. *In re J.,* 72 Misc.2d 683, 340 N.Y.S.2d 306 (Family Court 1972). Cases such as this of maltreatment of a prior child present one of the few situations in which a juvenile court, and social agencies at its instance, can be alerted to take before-the-fact protective measures. The importance of court inter-

vention in such cases, even though no damage to the second infant is manifest, lies in the knowledge that neglect or abuse by a parent with a propensity toward it is often triggered by the child's growth. *In re G.,* supra; and see Helfer and Kempe, "The Battered Child" (University of Chicago, 1968).

Appellant emphasizes her testimony that her husband's visits were attended by a "friend or somebody or my brother would be over" to show, by way of rebuttal, that she was taking precaution for the safety of her surviving child; but it is particularly appropriate in this proceeding that this court defer to the juvenile court on questions of credibility and to that court's motivation in what was believed best for the child. *State v. Greer,* 311 S.W.2d 49 (Mo. App.1958).

*In re M— P— S—,* supra, and *State v. Greer,* supra, are cited by appellant on her contention that the evidence was insufficient to sustain the allegations of the petition. They are not in point because, as previously demonstrated, the allegations of the petition were sustained by evidence.

Appellant, by citation of Sections 211.411 and 211.451, RSMo 1969, and *H. G. R. v. Smith,* 483 S.W.2d 779 (Mo.App.1972), suggests misconception of this proceeding because those authorities deal with termination of parental rights and are, consequently, not in point. In contrast to the finality of the severance of parental rights in a termination proceeding, permanent custody of A., Jr., has not been barred forever to appellant. He has been placed in foster care under jurisdiction of the court for his protection; and the question of his custody "until further order of the court" is subject to modification. § 211.251, RSMo 1969.

Judgment affirmed.

All concur.