In the Interest of M.A.T.

M.T. (Natural Father), Appellant,

v.

David William KIERST, Respondent.

No. WD 51698.

Missouri Court of Appeals,
Western District.

Submitted July 8, 1996.

Decided Sept. 24, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1996.

Application to Transfer Denied
Dec. 17, 1996.

Laura H. Tyler, Kansas City, for appellant.

Lori Stipp, Kansas City, for respondent.

Before HANNA, P.J., and SMART and
EDWIN H. SMITH, JJ.

SMART, Judge.

This case presents a jurisdictional issue in an action brought by the Juvenile Officer of Jackson County, Missouri, alleging that a minor child is in need of care and treatment. M.T. appeals from the trial court's order finding the court had jurisdiction to intervene on behalf of M.A.T. and that M.A.T. was in need of care and treatment.

On July 26, 1995, the juvenile officer filed a third amended petition on behalf of M.A.T., a male child, born January 23, 1995 alleging that the child was in need of care and treatment. M.A.T. was in the custody of his parents, M.T. and T.T., residing in Kansas City, Missouri. The petition alleged that M.A.T. was without proper care, custody, and support. Count I involved issues relating solely to T.T., the child's biological mother. Count II, addressing issues related solely to M.T., the child's biological father, provided:

> The child is without proper care, custody, and support in that the father plead guilty to and judgment was entered on two class B felony counts, sodomy and rape, upon LaDenia Cooper, this child's half-sibling, on April 2, 1991, in the Circuit Court of Jackson County, Missouri. Further, the father's parental rights were terminated to

three of this child's siblings in September of 1994. Further, the father chose not to participate in services offered by the Division of Family Services.

On August 28, 1995, a hearing was conducted and M.T. stipulated to the truth of the allegations contained in Count II. He denied that the allegations were sufficient for the trial court to assert jurisdiction and he was permitted to present evidence on this issue.

At the hearing, M.T. presented three witnesses to testify on his behalf, Stacy Grinnell, Julie Wallace, and Kisa Pierson. M.T. also offered a copy of a journal entry which showed that his parental rights were terminated to M.A.T.'s three siblings by default due to his abandonment of the children. Ms. Grinnell testified that she is a probation and parole officer. She stated that M.T. was paroled on November 9, 1993, after serving a sentence for rape and sodomy of his nine-year-old step-daughter. She further testified that, while incarcerated, M.T. completed the Missouri Sex Offender Program.

Julie Wallace testified that she is a supervisor at the Division of Family Services ("DFS"). She stated that M.T. was offered Family Preservation Services by the DFS, but that he declined to participate in the offered services. Ms. Wallace testified that M.T. was not interested in working on goals that related to the minor child, but was only concerned with his own personal goals, e.g., fixing up the house where he lived. Ms. Wallace stated that M.T. had participated in the sexual offender program while incarcerated. She thought it would be beneficial for M.T. to participate in a MOCSA sexual assessment to confirm that he was no longer a threat to children.

Kisa Pierson testified that she is a family preservation specialist with The Children's Place and that she worked directly with M.A.T. and his mother. When Ms. Pierson first started working with the family, M.T. participated by setting goals for himself, agreeing to help T.T. with her substance abuse problem and to work on parenting and child development issues. M.T.'s primary objective was to fix up the house where he lived and when Ms. Pierson informed M.T. that this was not an appropriate goal for the Family Preservation Services, he decided not to participate and he removed his name from the goal sheet.

After all the evidence had been presented, M.T. renewed his motion to dismiss alleging that the petition did not state a cause of action. The trial court found that the allegations contained in Count II of the petition were supported by clear, cogent and convincing evidence and that M.A.T. was, therefore, under the court's jurisdiction pursuant to § 211.031.1, RSMo 1994.[1] The court ordered that: (1) the child be placed in his mother's custody, under the supervision of DFS; (2) DFS closely supervise the situation to assure that controlled substances are not used in the environment; (3) the mother participate in substance abuse counseling; (4) M.T. submit to sexual abuse screening; (5) M.T. only have supervised contact with the child; and (6) M.T. not reside in the home with the child.

M.T. raises only one issue on appeal, that the trial court erred in sustaining the allegations in Count II of the petition because there was no clear, cogent and convincing evidence that the child was in need of care and treatment.

The juvenile court has jurisdiction when there is clear and convincing evidence that a child is in need of care. *In the Interest of A.L.W.*, 773 S.W.2d 129, 132 (Mo. App.1989). In order to assert jurisdiction, the court does not have to find that a dangerous situation exists. *Id.* The court must find only that the minimum quality of care which the community will tolerate has not been supplied to a child. *Id.* The juvenile court is authorized to act to prevent the deterioration of a child's situation. *In the Interest of C.L.M.*, 625 S.W.2d 613, 616 (Mo. banc 1981). When faced with a potentially harmful situation, the juvenile court does not have to wait until harm is done before it can act. *In the Interest of J.J.*, 718 S.W.2d 235, 237 (Mo.App.1986)(mother diagnosed schizophrenic and father diagnosed psychotic; court did not have to "test" the parents by

---

1. All statutory references refer to RSMo 1994, unless otherwise indicated.

subjecting child the potentially harmful environment before exercising jurisdiction).

A similar factual situation is presented in *In re A.A.*, 533 S.W.2d 681 (Mo.App.1976), where a mother appealed from an order declaring that her one-year-old son was in need of care and services under jurisdiction of juvenile court. A.A.'s father had been convicted of the homicide of the boy's two-year-old sister, was presently out on bond pending appeal of the conviction and was allowed by the mother to visit A.A. *Id.* at 683. This court held that the prior abuse of another child presented a prima facie case of imminent danger to a sibling in the same circumstances to justify intervention by the juvenile court. *Id.* at 684. In its opinion, this court stated:

> The nature and extent of the injuries sustained by C. at the hands of her father is evidence which sustains the court's findings that an environment which continues to admit such a person is dangerous to another child of tender years there residing, is injurious to such child's welfare, and justifies intervention by the court by assuming jurisdiction of such child.... Cases such as this of maltreatment of a prior child present one of the few situations in which a juvenile court, and social agencies at its instance, can be altered to take before-the-fact protective measures. The importance of court intervention in such cases, even though no damage to the second infant is manifest, lies in the knowledge that neglect or abuse by a parent with a propensity toward it is often triggered by the child's growth.

*Id.; see also D.G.N. v. S.M.*, 691 S.W.2d 909 (Mo. banc 1985)(a termination of parental rights case involving a similar fact situation).

 The reasoning in *In re A.A.* applies equally here. The first priority in this type of case is the welfare of the child. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). M.T. stipulated that he pleaded guilty to two class B felony counts of sodomy and rape upon M.A.T.'s nine-year-old sibling; that his parental rights were terminated to three of M.A.T.'s siblings; and that he chose not to participate in family preservation services offered by DFS. The evidence revealed that M.T. was living with T.T. and M.A.T. part of the time, and residing elsewhere part of the time. The juvenile court may intervene where a child is subjected to unsupervised contact with an individual, especially a parent, who has been convicted of sexually abusing another minor child. The court is not required to wait for the child to be abused before it intervenes. Thus, the trial court did not err in finding that clear, cogent and convincing evidence was presented to support its assumption of jurisdiction based on the child's need of care and treatment pursuant to § 211.031.

Judgment is affirmed.

All concur.