Ralph E. Cory, J.
The instant neglect petition alleges that the “ Respondent neglected his child Margery Karr, under Section 1012 of the Family Court Act, in that he abandoned the child on December 26, 1966 and the child has resided with the Petitioner since that date. On October 17,1970, the Respondent contacted the Petitioner and demanded that the child be surrendered to him so that he could bring it to some religious cult in Brooklyn permanently. The. Respondent has a history of mental and emotional illness and has been confined to a state hospital.”
A full fact finding hearing was held in which the petitioner and several witnesses testified on his behalf and one witness testified for the respondent who did not take the stand. This court concludes that the child was placed with the petitioner voluntarily by the respondent father and with the consent of the petitioner on December 26,1966. The petitioner and respondent are not related. The credible testimony, unrebutted, revealed that the respondent father contacted the petitioner and inquired about his daughter several times in the intervening years from the alleged act of abandonment (Dec. 26, 1966) to the date of the petition (Oct. 21, 1970). He also had some visitation privileges with his daughter during that period. The respondent also offered to pay some of the expenses incurred by the petitioner in caring for the child, to the limited extent of his income, an offer which was refused by the petitioner. This testimony was not rebutted. Accordingly, there was no proof adduced in any way, manner or form that this child had been abandoned by her parent. Under the facts and circumstances of this case, there *914 never was any abandonment with no intention of returning. There was no renouncing and forsaking of the child by the father. The leaving of the child by the respondent with the petitioner was a voluntary arrangement acceptable to both sides and such an act never ripened into abandonment since the necessary element of intent to abandon is entirely lacking as revealed by the credible evidence above set forth. There is no abandonment therefore as defined in the statute. (Family Ct. Act, § 1012, subd. [f], par. [i], subpar. [B]; subd. [f], par. [ii].) The attorney for the child (Legal Aid Society) conceded in his summation that there was no abandonment of the child in this case.
It is axiomatic in the law of neglect that the parent sought to be charged with neglect must have custody, care and control of the child during the period when nelgect charges are alleged against the parent. Section 1012 of the Family Court Act is very specific in defining a11 neglected child ’ ’. Since the respondent did not have custody of the child during the period of the alleged neglect in the petition, he cannot be held responsible for the physical, mental or emotional condition of the child being impaired or in imminent danger of being impaired as the result of the failure of the parent to exercise a minimum degree of care. There is no such allegation in the petition, nor does the petition allege the person legally responsible for the child’s care (the petitioner) exercised improper care or failed to exercise a minimum degree of care.
There was also no credible proof adduced that the respondent failed to supply the child with adequate food, clothing, shelter, education, medical or surgical care, though financially able to do so. Because of the petitioner’s voluntary acceptance of custody of the child and his expressed willingness to do so as if she were his own child, the parent or respondent father was not required to supply the child with adequate food, clothing, shelter, education, medical or surgical care. Again he had no custody of the child and no neglect charge could be brought against him on this basis. Despite this however, the respondent father as parent made such an offer to the extent of his limited financial capacity, which offer was refused by the petitioner. This is the antithesis of neglect as it involves some demonstration of positive parental concern. Again, since the father never had custody of the child during the period of neglect in the petition, he could never be held responsible for improper supervision or guardianship by allowing to be inflicted harm or a substantial risk thereof, including the risk of excessive corporal punishment; or by using drugs or alcoholic beverages to the extent he loses self control of his actions or by any other acts of a similarly serious nature requir *915 ing the aid of this court. There was no proof or testimony adduced as to these important elements of neglect against the respondent because he never had care, custody and control of the infant child during the time specified in the petition. Therefore none of the elements of neglect, including abandonment, required by the statute defining a neglected child have been proven or sustained. (Family Ct. Act, § 1012, subd. [f].)
The petition alleges that the respondent had a history of mental and emotional illness and that he was confined at one time in a State hospital. The fact that the respondent had a previous history of mental and emotional illness and had been confined at one time in a State hospital is not conclusive as to whether the respondent father is now suffering from mental or emotional illness at the time of the hearing. No medical or psychiatric proof was submitted by the petitioner that the respondent had not been properly discharged from the State hospital where he had been confined. The fact that a person may at one time have been a mental patient or confined to a State hospital is not neglect per se. It is not unfitness per se. Even if it is conceded it is some form of imperfection, it is not unfitness. (People ex rel. Geismar v. Geismar, 184 Misc. 897, 908.) The imperfection must ripen into unfitness by connecting the actual elements or indicia of neglect stemming from such unfitness under the statute. None of these elements has been proven by the credible testimony in the instant case.
Furthermore, in neglect proceedings, the court’s duty is to determine whether despite any past deficiency, children at the time of the hearing are suffering or likely to suffer from neglect. (Matter of Vulon, 56 Misc 2d 19.) Such terms as physical, mental or emotional condition of the child is in imminent danger of becoming impaired or in providing the child with improper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm or a substantial risk thereof as set forth in the statute do not apply to future acts of neglect unconnected or not based on present findings of neglect. The term '' imminent danger of becoming impaired” and “substantial risk of harm ” apply to a substantial probability that the child will be found to be abused or neglected under article 10 of the Family Court Act, and that the child is in grave imminent danger to her life and limb. Such facts do not exist under the proof presented in the instant petition. Such terms and their effective application presuppose a previous finding of nelgect or child abuse. No such finding can take place in the instant petition for the reasons above set forth.
*916 The instant petition then boils down and is predicated almost entirely on the allegation that the respondent father intended to bring' his child up in some religious cult in Brooklyn to which he belonged. This cult was identified at the hearing as the International Society for Krishna Consciousness, Inc., a religion corporation chartered under the laws of the State of New York. According to the witness for the respondent, the head of the Brooklyn chapter of the organization, the movement is 5,000 years old. Their membership live in a communal relationship in a compound in Brooklyn while sleeping accommodations are provided in separate areas for married persons and single persons. Many children are in the movement and the organization runs a grade school with the necessary curriculum. It is not a religious shool but the cult is a branch of the Krishna religion. Dietary laws are followed and the members eat their meals on the floor. The adult members of the organization do not work. The movement is supported by indorsements, the publication of books and pamphlets, the sale of incense and from the solicitation of funds on street corners where its members in colorful bizarre attire with shaven heads and prayer beads and long robes chant in the name of God to propagate a consciousness of the Krishna movement and to systematically propagate spiritual knowledge to society at large and to educate all peoples in the technique of spiritual life in order to check the imbalance of values in life and to achieve real unity and peace in the world and generally for similar other purposes set forth in the certificate of incorporation.
Testimony was in conflict as to whether or not children in the movement solicit funds and whether or not such solicitation is ‘ ‘ begging ’ ’.
Accordingly, the issue solely before this court as to this portion of the petition is whether membership and life in this cult by the child, the subject of the petition, will be an act of neglect if the respondent father takes her into this movement as a way of life as he concededly has stated he will do.
It is impossible for this court to decide this important and broad question on the basis of the neglect petition before it. Such questions are too conjectural, too far in the future, too remote and too uncertain for this court to act now. The evidence presented in the instant case is far from sufficient to decide permanent custody. Article 10 of the Family Court Act is for the effective protection of children, their health, safety and welfare. Under this neglect petition, none of the indicia of neglect has been shown or proven to comply with the Statute. (Family Ct. Act, § 1012, subd. [f].)
*917 Article 10 of the Family Court Act is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being. It is designed to provide a due process of law for determining when the State, through its Family Court, may intervene against the wishes of the parent on behalf of a child so that his needs are properly met. (Family Ct. Act, § 1011.) This statute is not a vehicle for recrimination against parents or their constitutional rights — including upbringing of children in the future. The law does not require, nor can it require, conformity in religious beliefs. The bizarre, the “ off beat ”, the strange as well as the normal sects or denominations of worship are equally protected under the Constitution, without fear or favor. (Ü. S. Const., art. I.) What is rank heresy to some, is orthodoxy to others and vice versa.
The law properly provides for intervention by society when parental care is deemed dangerously faulty or insufficient. But the question is one of degree and the law must be flexible enough so that the State may intrude upon the sanctity of the family only in the most justifiable circumstances. (Paulsen, The Legal Framework for Child Protection, 66 Col. L. Rev. 679, as reported in 7 Col. J. of Law and Social Problems No. 1, Winter 1971, p. 59.)
The court should exercise its jurisdiction to interfere with paternal guardianship reluctantly and only upon strong and convincing proof of unfitness on the part of the parent or material benefit to the child. Finding of neglect of child cannot he made lightly. (Matter of Vulon, 56 Misc 2d 19, supra.) Accordingly, this court has no authority on the basis of the present petition before it, to grant what would be in effect injunctive relief of the type sought to be enforced here — that it will be neglect per se, neglect in futuro, for the respondent father to take his child, the subject of this petition, into this movement to which he now belongs.
This question should be decided by a full habeas corpus proceeding where custody of the child only would be the sole determination, to hear and determine at length with sufficient witnesses and expert testimony, for the best interests and welfare of the child, unencumbered by any questions of neglect or collateral inquiries as in the instant petition.
On the basis of all of the foregoing, this neglect petition is dismissed in its entirety.