OPINION OF THE COURT
Daniel D. Leddy, J.
On November 13, 1979, the Commissioner of Social Services filed the instant petition seeking to have the subject child adjudged abused by her parents, Michael and Maureen G., respondents herein. The petition alleges: "On October 21, 1979, the Respondents’ child, David G., born August 11, 1979, was dead on arrival at St. Vincent’s Medical Center. According to the Medical Examiner, the cause of death was malnutrition * * * As a result of the above, child Maureen is also abused and in imminent danger of becoming abused”.
The court has found by a fair preponderance of the credible evidence that respondent mother was the primary caretaker of the deceased child, David G., aged two and one-half months at death, and of the subject child, Maureen G., aged two years, during the period relevant to the instant petition. The court has also found that David G., died of severe malnutrition and dehydration, and that he had no predisposition to either condition, both of which were caused solely by gross negligence in this child’s care and feeding.
The court therefore finds that the deceased child, David G. *111 was abused within the meaning of section 1012 (subd [e], par [ii]) of the Family Court Act in that the mother allowed to be created a substantial risk of physical injury to him, by other than accidental means, which was likely to and did, in fact, cause his death.
Based on this finding of abuse as to David G., the court concludes that the subject child, Maureen G., is neglected in that her physical condition is in imminent danger of becoming impaired as a result of the failure of the respondent mother to exercise a minimum degree of care in providing the child with proper supervision and guardianship.
In making this finding of neglect with regard to the child, Maureen G., the court’s decision is governed by section 1046 (subd [a], par [i]) of the Family Court Act. The conduct leading to a finding of abuse as to David G. is so proximate in time to the date of these proceedings that it could be reasonably concluded that the condition giving rise to such conduct, being current, still exists. Thus, the mischief which cases, e.g., Matter of Daniel C. (47 AD2d 160) and Matter of Kristina Lynn J. (72 Misc 2d 683), would prevent, is avoided herein. As in the Matter of Anthony (81 Misc 2d 342, 344), this court is not dealing with stale evidence. The proof offered as to the abuse of David G. is probative as to whether at the time of the hearing the subject child was suffering, or was likely to suffer, from abuse or neglect. (Matter of Daniel C., supra; Matter of Vulon, 56 Misc 2d 19; see, also, Matter of Terry S., 55 AD2d 689, 690.)
Moreover, at the fact-finding hearing, respondent mother testified that she believed she had acted properly in all respects regarding David. It is significant, therefore, that this mother’s ignorance of her deficiencies in dealing with David persists. Thus her continuing inability to grasp the realities of raising children creates an imminent threat to the subject child, which requires court intervention.
Nevertheless, the court does not find that Maureen G. is abused by respondent mother, but, rather, neglected. It is aware of respondent’s evidence that Maureen is a well-fed, healthy, happy child, who is devoted to her mother and vice versa. Respondent’s mother’s negligent parenting as to David has not visibly affected Maureen, and due to her age is less likely to have the life-threatening potential it had for her infant brother. And yet, there exists proof of danger to Maureen of future harm due to a lack of parental capacity on the *112 part of her primary caretaker. It is this risk of harm which causes Maureen G. to be neglected.
The court now turns to the case of the respondent father.
At the close of all the evidence herein, respondent father moved to dismiss the petition against him in that he was not the custodian of the deceased, nor surviving, child, did not live in the household with them, and was not responsible for their care, as defined in section 1012 of the Family Court Act. Moreover, he contends that he committed no acts of abuse or neglect toward his children.
In disposing of the first branch of respondent father’s motion to dismiss, the court refers to the language of the controlling statute.
"When used in this article [Family Ct Act, art 10] and unless the specific context indicates otherwise:
"(a) 'Respondent’ includes any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child * * *
"(e) 'Abused child’ means a child less than eighteen years of age whose parent or other person legally responsible for his care [has abused said child]
"(f) 'Neglected child’ means a child less than eighteen years of age
"(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care * * *
"(g) 'Person legally responsible’ includes the child’s custodian, guardian, any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.” (Family Ct Act, § 1012; emphasis added.)
Respondent father would have the court construe this language to require that in order for a parent to be subject to an abuse or neglect finding in an article 10 proceeding he must be a "person legally responsible” for the subject child, as that term is defined in subdivision (g) of section 1012 of the Family Court Act. He would have this court follow the reading of this statute, as enunciated in Matter of Karr (66 Misc 2d 912). *113 There it was held that (p 914): "It is axiomatic in the law of neglect that the parent sought to be charged with neglect must have custody, care and control of the child during the period when neglect charges are alleged against the parent.” This court, however, refuses to follow Karr’s understanding of the statute, finding that such an understanding resulted from a failure to recognize and implement the statute’s legislative purpose and intent, and from a misapplication of the rules of statutory construction.
The purpose clause of article 10 of the Family Court Act states that it "is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being [and] is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.” (Family Ct Act, § 1011.) The primary purpose of article 10 proceedings, therefore, is to protect children from abuse and neglect. (People v Kenyon, 46 AD2d 409, 412.) These proceedings are civil in nature (Matter of Diane B., 96 Misc 2d 798, 800), and are to be clearly distinguished in purpose and intent from criminal actions. They are not designed to punish offenders for acts against their victims, but to protect their victims from further harm. And, more precisely, they are not designed to protect them merely as victims, but as victimized children. The focus of the article is on children as members of a family, as that term is now broadly defined, and their protection from harm caused by persons whose responsibility for said children is based on some de jure or de facto parental relationship with them. (People v Webb, 52 AD2d 8, 10.)
"The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 92.) In general, statutes are not to be so narrowly construed as to thwart legislative design. (Verona Cent. Cheese Co. v Murtaugh, 50 NY 314, 317; People v Dennis, 206 Misc 402, 403.) "Whatever is within the spirit, although not within the letter, is within the statute and what is within the letter and not within the spirit is not within the statute.” (Standard Acc. Ins. Co. v Newman, 2 Misc 2d 348, 359, affd 268 App Div 967, app den 268 App Div 1039, as quoted in People v Schuster, 83 Misc 2d 871, 879.)
*114 Subdivision (a) of section 1012 of the Family Court Act must therefore be interpreted to include within the definition of "respondent” any person whose relationship to the subject child is parental in nature, whether by law or fact, and who is alleged to have committed acts of abuse or neglect against said child. The words "parent or other person legally responsible”, which appear in subdivisions (a), (e), and (f) (paragraph [i]) of section 1012 must be read to mean a parent or one acting in loco parentis. (See Matter of Children Alleged to be Neglected, 76 Misc 2d 987, 989; Matter of Yvette R., 61 Misc 2d 20, 21-22.) Subdivision (g) of section 1012, which defines "person legally responsible”, thus clarifies and explains who might be included under the title in loco parentis, or, in the words of the statute, "other person legally responsible”. Subdivision (g) amplifies the class of respondents liable under article 10; it is not meant as a limitation. Matter of Roman (94 Misc 2d 796, 800) clearly points this out: "In 1972, the Legislature broadened the concept of a 'person legally responsible’ to pull within its net persons continually or regularly found in the same household as the child. (L 1972, ch 1015, § 2.) Their intent was clearly to equip the Family Court with a jurisdictional foundation upon which to hear cases where the natural parent’s paramour was responsible for the abuse or neglect of a child. As nonconventional living arrangements became increasingly prevalent, it became necessary to give the children in those situations the same protection as children in the more traditional family unit.” Therefore, a proper respondent in an article 10 proceeding may be a parent or some other person acting in a parental capacity, as defined by subdivision (g) of section 1012 of the Family Court Act. It should be noted that this interpretation is supported by that rule of statutory construction known as the "doctrine of the last antecedent”. This rule requires that relative and qualifying words, phrases, and clauses be applied to the words or phrases immediately preceding, and not extend to or include others more remote, unless such extension is clearly required by a consideration of the entire act. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 254; see, also, Matter of Podiatry Soc. of State of N. Y. v Regents of Univ. of State of N. Y., 78 Misc 2d 731, 734.) The phrase "other person legally responsible” should be treated as an independent phrase, with none of its modifiers being applicable to "parent”, and with its definition in subdivision (g) being likewise inapplicable to "parent”.
*115 To read section 1012 of the Family Court Act as Karr (66 Misc 2d 912, supra) did, an estranged spouse and parent without custody of his children, and failing to visit them at regular intervals in the home of the custodial parent, could conceivably come to their home, commit acts of abuse or neglect against his children, with or without the custodial parent’s consent, and not be subject to the Family Court’s jurisdiction under article 10. It is true of course that in some cases a proceeding could be originated under article 8 of the Family Court Act (Family Offense Proceedings), which would have the same or similar effect in terms of a final disposition. Under article 8, however, the Family Court’s jurisdiction is strictly limited to family offense matters concerning only certain enumerated acts which would otherwise be crimes, viz., disorderly conduct, harassment, menacing, reckless endangerment, assault, or attempted assault. (See Family Ct Act, § 812; see, also, People v Lewis, 29 NY2d 923.) Thus children, victimized by an estranged parent committing acts other than those countenanced by section 812 of the Family Court Act could not proceed under article 8 and could not avail themselves of the protective remedies of article 10 of the Family Court Act, which include a final order of protection under section 1056 of the Family Court Act. This would be an absurdity (McKinney’s Cons Laws of NY, Book 1, Statutes, § 145) and a contravention of the legislative intent of article 10, results to be avoided by this court.
It should also be noted that the court is cognizant of language in the cases similar to that which follows: "Once the petitioner has established the existence of injuries sustained by the child which are substantial in character while the child was in the lawful custody of his parents * * * then petitioner is deemed to have established a prima facie case” (Matter of Young, 50 Misc 2d 271, 273; emphasis added). This language should not be misinterpreted. It refers to section 1046 (subd [a], par [ii]) of the Family Court Act, which introduces the tort doctrine of res ipso loquitur into the evidentiary law of child protective proceedings (Matter of J. R., 87 Misc 2d 900, 905). It simply indicates that if a child is in the lawful custody of a parent and injuries occur, it is presumed, subject to further explanation, that the parent caused them. This language does not establish a threshold requirement that to charge a parent with abuse or neglect he must be the lawful custodian. It merely clarifies the applicability of the res ipso loquitur *116 doctrine. The lawful custodial parent could well defend himself by explaining that a child’s injuries had occurred while visiting with the noncustodial parent. The law of New York, particularly in this Judicial Department, is clear. To sustain a petition of abuse or neglect against a parent, that parent need not be a "person legally responsible” for the subject child. It is only necessary that petitioner prove that the separated parent had sufficient contact with the child so as to make his action or inaction responsible for the child’s injuries. (Matter of J. Children, 57 AD2d 568.)
Accordingly, respondent father’s motion to dismiss the petition on the ground that he was not a "legally responsible person” for the deceased child, David G., nor is presently a "legally responsible person” for the subject child, Maureen G., is denied.
There remains, then, the issue of respondent father’s culpability for the abuse of David G. and the neglect of Maureen G.
The court finds by a fair preponderance of the evidence that respondent father saw the child David on four separate occasions during the two and one-half months of his life. On the last of these occasions, the paternal grandmother was present and complained in the presence of the respondent father that the baby "didn’t look right”, and that he was "very skinny”, and his skin appeared abnormal. The court also finds that the deceased child was conceived during his parents’ marital separation and born after their divorce, which was granted on July 24, 1979; that respondent father had beaten respondent mother numerous times and that she was deathly afraid of him, and finally, that respondent father never lived with or cared for his deceased son, never requested to see him, never asked about his health, nor supported him in any way.
The court is convinced that this father knew or should have known that his son’s health, and, ultimately, his very life, was in jeopardy. In the face of this awesome fact, he did nothing. Instead, having left his estranged 19-year-old wife, unsupported, to care for a toddler and a newborn infant, he merely looked in on them occasionally, putting himself on notice as to their situation, and then walked away. He saw or should have seen a child dying, and offered no help, made no complaint, sounded no alarm. Although this inaction may not have hastened David’s death, it certainly did not prevent it. And it *117 is by this omission that Michael G. violated his paternal obligation to protect his child from recognizable harm.
Therefore, respondent father is also liable for the abuse of David G. in that he allowed to be created a substantial risk of physical injury to said child, by other than accidental means, which was likely to and did, in fact, cause his death.
Furthermore, based on this finding of abuse, and pursuant to section 1046 (subd [a], par [i]) of the Family Court Act, the cases cited supra, and the reasoning set forth above with regard to respondent mother’s liability for the neglect of Maureen G., the court finds said child is neglected in that her physical condition is in imminent danger of becoming impaired as a result of the failure of the respondent father to exercise a minimum degree of care in providing the child with proper supervision and guardianship.
The court concludes that article 10 of the Family Court Act is grounded on a fundamental policy that parents are the primary protectors of their children. Society depends on and demands their vigilance. If parents fail in this vigilance to a degree which is rationally deemed to be dangerous, society, through the State, must intervene. As to the deceased child, this father’s failure has been proven. As to the surviving child, this failure now stands as a threat to her future protection to the extent contemplated by the definition of neglect in section 1012 (subd [f], par [i]) of the Family Court Act.
Accordingly, having determined that the allegations of the instant petition have been sustained by a fair preponderance of the evidence to the extent that the subject child has been found neglected within the meaning of subdivision (f) of section 1012 of the Family Court Act, it is ordered that Maureen G., age two years, is adjudged a neglected child by her mother, Maureen G., and her father, Michael G., the respondents herein.