OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Parental threats to kill one’s child must trigger swift and immediate action from those charged with the protection of children. And where such threats are made by a parent who, by action, inclination, mental state, or otherwise, exhibits a capacity to carry them out, a finding of neglect as defined in section 1012 (subd [f], par [i], cl [B]) of the Family Court Act may properly be made without any evidence of present or past harm to the child.[2]
The instant proceeding arises from a petition filed by the Commissioner of Social Services seeking an adjudication that 9-month-old Jason B. and his two siblings, ages 4 and 10, are neglected children. The respondent is their natural mother. After evaluating the credibility of the witnesses, *481 the court finds that the following facts have been established by clear and convincing evidence.[3]
On October 25, 1982, while in treatment at a program operated by North Richmond Community Mental Health Center (North Richmond), the respondent mother made the following statement: “What do I have to do to get help, something stupid like dangling one of my kids over the ferry?” Noting that the respondent was “in crisis” and capable of hurting the children, a social worker from North Richmond filed a report of suspected child abuse or mistreatment (Department of Social Services Form 2221).
Responding to this report, Ronald Haucke, a caseworker for Special Services for Children on Staten Island, visited the respondent at her home. She stated to him that she was “very depressed”, “wanted to end it all”, and would “take the children with her”. Respondent now maintains that she never intended to hurt her children and points to the fact that there is no evidence of any past or present injury to them.
Fortunately, however, for the sake of the children, the absence of actual injury, either past or present, does not foreclose State action to protect children from imminent danger. Society’s efforts to halt the continuing slaughter and battering of innocent children would suffer a devastating, if not fatal, blow should the State be required to desist in the face of an imminent risk of harm.
Thus, the courts have found a child neglected based solely on the parent’s abuse or neglect of a sibling. In Matter of Christina Maria C. (89 AD2d 855) the Appellate Division stated: “Evidence of. the physical abuse of one child logically supports the conclusion that the parents have a faulty understanding of the duties of parenthood and that their other child is therefore neglected because there is a substantial risk that his or her mental, emotional or physical condition is in imminent danger of becoming impaired”. (See, also, Matter of Maureen G., 103 Misc 2d 109; Family Ct Act, § 1046, subd [a], par [i].)
*482 Similarly, a parent’s mental illness may form the basis of a neglect finding where it exposes the child’s physical, mental or emotional condition to an imminent risk of impairment. In such instances, there-is no requirement that past or present harm be demonstrated in order to sustain the finding. (Matter of Millar, 40 AD2d 637, affd 35 NY2d 767; Department of Social Serus., St. Lawrence County v Joan R., 61 AD2d 1108.)
In fact, where a parent poses an imminent risk to a child’s life or health, a finding.of neglect may be made even where the parent never had the opportunity to care for the child. Thus, in Matter of Alfredo HH. (84 AD2d 860) the Appellate Division affirmed a finding of neglect where the parents of a newborn child were developmentally disabled to the extent that the child’s mental and emotional condition would suffer severe impairment if they were allowed to assume his care. (See, also, Matter of Eugene G., 76 AD2d 781.) And in Matter of “Male” R. (102 Misc 2d 1) the Family Court found neglect where the respondent mother, a drug abuser, gave birth to an infant suffering drug withdrawal symptoms.
It is in the rationale of the foregoing decisions that parental threats against a child must be evaluated. Thus, the threshold issue is whether the parent presents a genuine danger to the child, and in this regard, the mere utterance of a threat to kill or seriously injure one’s child must be viewed as sufficiently serious to establish a prima facie case of neglect.
Since the parent made the threat, it is only reasonable that she be required to come forward to satisfy the court that the children are, and will be, safe. To hold otherwise would mean that a parent could issue a death threat, remain silent thereafter, and leave the child protective service powerless to act unless it could prove that the parent actually intended to carry out her threat. Such a result would put an extremely onerous, and perhaps, impossible burden on the petitioner in child protective proceedings. Furthermore, it would seriously undermine legislative efforts “to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being.” (Family Ct Act, § 1011.)
*483 In the instant case, the efforts by the respondent mother to dismiss her threats as the product of an isolated instance of frustration are not convincing.[4] For, it is her special, ongoing vulnerability to depression that leads the court to conclude that these children of tender age are in danger.
In January of 1976, the respondent was admitted to St. Vincent’s Medical Center on Staten Island with a diagnosis of “Schizophrenia with Borderline Features”. She remained hospitalized for 17 days.
On May 13, 1982, she was again admitted to St. Vincent’s with complaints of “feeling depressed, insomnia, and unable to function or care for her children”. The observation was further made that she was “vaguely suicidal”. A final diagnosis of “Major Depression, Recurrent with Psychotic Features” was reached. The threats against her children were made five months later and at a time when she was actually receiving counseling.
Under all the circumstances, the threats against Jason and his siblings, considered in the light of the respondent’s own emotional state, lead the court to conclude that these children are greatly at risk. Accordingly, they are adjudicated to be neglected children in that their physical, mental and emotional condition is in imminent danger of becoming impaired.
The children are continued on remand to the Commissioner of Social Services pending a full dispositional hearing which is set down for March 18, 1983. In aid of disposition, the Probation Department is ordered to prepare an investigation and report and the Family Court clinic is directed to do a full diagnostic assessment. Pending disposition, the Commissioner of Social Services is ordered to afford and supervise weekly visitation to the respondent. The temporary order of protection is continued.

. Since the petitioner herein seeks only an adjudication of neglect, the court need not decide whether such threats may form the basis for a finding of abuse under section 1012 (subd [e], pars [i], [ii]) of the Family Court Act.

. Under subdivision (b) of section 1046 of the Family Court Act, a preponderance of the credible evidence will sustain a finding of abuse or neglect.

. It should be .noted that the respondent admitted making the remark at North Richmond, but denied threatening the children in the presence of Mr. Haucke. The court, however, believes Mr. Haucke and finds that the respondent’s testimony on this point was not credible.