OPINION OF THE COURT
Anthony F. Bonadio, J.
In this article 10 of the Family Court Act child protective proceeding, the respondent, who is alleged to have committed various sex offenses (see Penal Law, §§ 130.30, 130.35, 130.50, 130.65) against the above-named child (now 11 years of age), moves to dismiss the petition as insufficient (cf. CPLR 3211, subd [a], par 7), on the ground that the acts *16 complained of occurred over a year ago, and that the underlying conditions upon which the petition is based no longer exist. The respondent also asserts, in his answer, that since he is not a parent, person legally responsible for, or custodian of the child (see Family Ct Act, § 1012, subds [a], [g]), he cannot be named as a respondent in an article 10 proceeding. Finally, the court, sua sponte, treated respondent’s motion, in part, as an application to dismiss on the ground that this court’s “processes” are “inappropriate” or “insufficient” (Family Ct Act, § 1014, subd [a]).[2] This decision addresses all three issues.
The relevant facts in this matter are not disputed, and the parties stipulated [3] to many of them. The respondent lived with Mary R. and her two children (one of whom — Theresa C. — is the child alleged to have been abused) for some 26 months, from January, 1980 to March, 1982. Ms. R. and the respondent never married. Since March of 1982, the respondent has had no contact with Theresa C. or her mother, and the respondent and Ms. R. have no present intention of resuming their relationship.
On March 3, 1983, about one year after the respondent and Ms. R. separated, the Monroe County Department of Social Services filed this petition, alleging that “[d]uring the time period of January, 1980 through March, 1982, while the Respondent resided with Mary [R.] and her two children, the Respondent engaged Theresa [C.] in repeated acts of sexual contact wherein [he]”. At the time the petition was filed, and for some period of time prior thereto, Theresa was living not with her mother or the respondent, but with her natural father. Finally, it appears that the abuse alleged here came to the attention of the petitioning agency during its investigation of similar allegations against this respondent involving another child.[4] The petitioner seeks a determination that Theresa is an “abused *17 child” as that term is defined in section 1012 (subd [e], par [iii]) of the Family Court Act.[5]
1. Is Mr. C. appropriately named as a respondent?
Subdivision (a) of section 1012 of the Family Court Act defines a respondent as “any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child”. Subdivision (g) of section 1012 includes within its definition of a person “legally responsible”: “the child’s custodian, guardian, any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person cause[d] or contribute[d] to the abuse or neglect of the child.” (Emphasis added.)
This definition of “person legally responsible” is broader than the definition of the same term in subdivision (b) of section 119 of the Family Court Act. Assuming, for purposes of this motion, the truth of the petitioner’s allegations (Matter of C. B., 81 Misc 2d 1017),[6] Mr. C. clearly falls within the definition of “respondent”, since he was “continually * * * found in the same household as the child” at the “relevant time.” (§ 1012, subd [g].)[7] And, as Besharov noted in the Practice Commentary to section 1012: “The primary effect of this supplemental definition of the word ‘custodian’ is to authorize child protective petitions against paramours” (McKinney’s Cons Laws of NY, Book 29A, 1982-1983 Supp Pamph, p 455; Matter of Roman, 94 Misc 2d 796).[8]
*18 2. Does the petition state a cause of action?
The sufficiency of petitions in child protective proceedings which rely on old incidents — rather than on recent or contemporaneous acts — has received relatively scant judicial attention. In Marks v Grenier (165 Misc 784), a 1937 case arising under the old Domestic Relations Court Act, the court dismissed a neglect petition based upon acts which had occurred some 10 to 11 months earlier. The court stated (165 Misc, at pp 787-788):
“A petition, however, presented to, the court charging neglect of a child must state facts as they affect the child at the time the petition is presented.
“The petition before me alleges that some ten or eleven months ago the child had not been properly cared for. The allegations * * * are not alleged to be existing at the time the petition was signed * * * These conditions may no longer exist * * * The petition is wholly insufficient * * *
“The allegations in a petition of which this court will take jurisdiction must be specific and must relate to a condition now existing, not one existing some time in the past.” (Emphasis added.)
In Matter of Sais (94 Misc 2d 40), the court dismissed petitions charging the respondent parents with the abuse and neglect of their twin boys, where such allegations were based solely on prior adjudications of abuse and neglect against the parents with respect to other children some two to four years before (cf. Family Ct Act, § 1046, subd [a], par [i]).
*19 In Matter of Diana M. (104 Misc 2d 766), the court, relying on its prior decision in Sais (supra), dismissed, as insufficient, a neglect petition based upon two-year-old incidents. After observing that “changed circumstances” might render such allegations “moot”, the court noted (p 768): “Due process considerations prohibit a present finding of neglect on a two-year-old petition that was insufficient on its face then, and which now could not be sustained as an evidentiary matter because of the passage of time”.
Grenier (supra) and Diana M. (supra) are in accord with, and Sais (92 Misc 2d, at p 41) relies on, a line of cases often cited for the following proposition: “The issue upon which petitioner has the burden of proof, is whether current conditions are such that the children are in imminent danger of being abused or neglected (Matter of Daniel C., 47 AD2d 160; Matter of Anthony [81 Misc 2d 342], supra; Matter of Foreman, 75 Misc 2d 348; Matter of Santos, 71 Misc 2d 789; Matter of Fred S., 66 Misc 2d 683; Matter of Vulon, 56 Misc 2d 19 * * *)” (emphasis added; see, also, 12A Zett-Edmonds-Buttrey-Kaufman, NY Civ Prac, Family Ct Proceedings, par 30.06, p 30-26).
These cases, however, do not resolve the question of the sufficiency of this abuse petition because they are all primarily neglect cases. In our opinion, it appears that this petition states a cause of action for sexual abuse under section 1012 (subd [e], par [iii]) and is not insufficient merely because it relies on year-old claims.
Several provisions of article 10 support such a conclusion. First, this proceeding was timely commenced.[9] Second, the petition alleges facts which, if true, are “sufficient to establish that [Theresa] is an abused * * * child” (Family Ct Act, § 1031, subd [a]). Moreover, the definition of a “neglected child” under section 1012 (subd [f], par [i], cls *20 [A], [B]) recognizes that allegations of neglect should relate either to: (a) current conduct or present conditions; or (b) past conduct or old conditions, which are currently “harming” the child or are likely to do so in the near future (imminently). The more succinct definition of the “sexually abused” child — one against whom a sex offense has been committed — as well as the fact that abuse cases are not subject to a formal dismissal under section 1051 of the Family Court Act[10] on the ground that the aid of the court is not “presently” required — strongly suggests that the “contemporaneousness” of the alleged sex offense is not an element of this cause of action.
3. Should the court exercise jurisdiction?
The primary purpose of an article 10 proceeding is to help “protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” (Family Ct Act, § 1011; People v Kenyon, 46 AD2d 409; Matter of Maureen G., 103 Misc 2d 109). A related, perhaps secondary, purpose would be — where possible — “to preserve and stabilize family life” (Social Services Law, § 423, subd 1; § 411 [child protective services]; § 397, subd 2, par [a]; § 398, subd 2, par [a]). If the “processes” of this court cannot help in achieving these goals, Family Court intervention becomes unnecessary, perhaps counterproductive (Family Ct Act, § 1014; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, 1982-1983 Supp Pamph, Family Ct Act, §§ 1011-1014; Juvenile Justice Standards Project Institute of Judicial Admin, Amer Bar Assn Standards Relating to Abuse and Neglect, § 2.2, p 63 [1977 Tent Draft]; Besharov, Representing Abused and Neglected Children: When Protecting Children Means Seeking the Dismissal of Court Proceedings, 20 J Fam L 217-239).
Important policy issues are involved. For example, in Matter of Lambert (119 Misc 2d 326), the Family Court dismissed an abuse case prior to trial where the child had *21 died — as a result of the alleged abuse — prior to the commencement of the proceeding,[11] concluding that the child no longer needed the protection of the court (see, also, People v Brennan, 33 AD2d 139).
There are several factors which suggest that this court’s processes are inappropriate or insufficient in this case. The respondent has no custodial interests with respect to Theresa (see n 8). Theresa has not seen the respondent in one and one-half years, is not in danger of future or further harm (Matter of Maureen G., 103 Misc 2d 109, supra; Besharov, 20 J Fam L, at p 223), and it is questionable if she will actually benefit from a continuation of these proceedings (or even a finding) in any material way (see Matter of Kristina Lynn J., 72 Misc 2d 683). The changes in the circumstances of Theresa, her mother and respondent are likely to render substantial portions of any dispositional plan ineffective and/or obsolete (Matter of Carmen, 37 AD2d 629; Matter of Debra VV, 52 AD2d 960; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, 1982-1983 Supp Pamph, Family Ct Act, § 1012, pp 455-456; § 1014, p 490; § 1031, p 511).
Several factors suggest otherwise. As Theresa’s Law Guardian notes, there is no guarantee that the respondent will have no contact with Theresa or her mother. Upon a finding, the court could issue an order of protection (Family Ct Act, §§ 1052, 1056) prohibiting such contact. No compelling reason has been advanced demonstrating why either Theresa and/or the petitioner should be denied such relief.
Moreover, the court could require the respondent to attend counseling should the petition be sustained (Family Ct Act, §§ 1052, 1057; 22 NYCRR 2510.4 [a] [5]; [b] [1]). Although counseling in this context is generally geared to reuniting the child and abusive parent, that is not its only goal.
And, recent amendments to the Social Services Law, which demonstrate again a legislative concern for the *22 protection of children generally (see, also, Child Protective Services Act of 1973 [Social Services Law, art 6, tit 6, §§ 411-428]) undercut claims that this court’s processes are inappropriate or insufficient. Section 384-b was amended (L 1981, ch 739, §§ 7, 8) to provide for the termination of parental rights where a parent has “repeatedly” abused children, not necessarily his own (§ 384-b, subd 4, par [e]; subd 8, par [b]). A child is a “repeatedly abused” child if he was found to be abused by a parent under section 1012 (subd [e], pars [i], [iii]) of the Family Court Act (felony sex offense only) and that parent was found to have previously abused (under § 1012, subd [e], pars [i], [iii] [felonies only]) such child “or another child for whose care such parent is or has been legally responsible * * * within the five years immediately preceding the initiation of the proceeding in which such abuse is found” (§ 384-b, subd 8, par [b]).[12]
Accordingly, the motion to dismiss is denied, and the case placed on the Trial Calendar. As counsel is aware from discussions during several pretrial conferences, the court welcomes an appeal of this decision — appealable as of right under subdivision a of section 1112 of the Family Court Act — in view of the lack of appellate authority on the issues raised. Despite recent amendments to section 1112, it appears that any application for a stay of proceedings must be brought in the Appellate Division (Family Ct Act, § 1114, subds [a], [b]).

. A “dismissal” under subdivision (a) of section 1014 of the Family Court Act must be accompanied by a transfer to Criminal Court or referral to the District Attorney.

. The attorneys for the respective parties and the Law Guardian entered into an on-the-record stipulation (CPLR 2104) in lieu of a hearing under subdivision (a) of section 1014 (cf. Matter of Easter, 71 AD2d 762).

. We take judicial notice (see Fisch, NY Evidence [2d ed], § 1065; People v Singleton, 36 AD2d 725; People v Dritz, 259 App Div 210) of that other file (docket No. N-47-83) and note that it was recently adjourned in contemplation of dismissal (Family Ct Act, § 1039), with the respondent required to attend counseling.

. That section defines an abused child as: “a child less than eighteen years of age whose parent or other person legally responsible for his care * * * (iii) commits, or allows to be committed, a sex offense against such child, as defined in the penal law”. No claim is made that Theresa was abused or neglected by her mother, the petition specifically alleging that the acts complained of occurred without the knowledge of Mary R.

. We note, however, that all the crucial allegations are made “upon information and belief” and neither the source(s) of informations or ground(s) for belief are stated (see CPLR 3020, 3021; cf. Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, 1982-1983 Supp Pamph, Family Ct Act, § 1031, pp 510-511). Questions relating to such pleadings — not raised here — have been involved in at least two recent Family Court cases, including one article 10 proceeding (see Matter of Maecaeio, NYLJ, Aug. 8, 1983, p 16, col 1 [art 10]; Matter of Commissioner of Social Servs. v O’Neil, 94 AD2d 480 [paternity]).

. Nor does the fact that the respondent no longer lived with Theresa when this petition was filed deprive the court of jurisdiction (Family Ct Act, § 1013, subd [d]; cf. § 1031, subd [d]).

. While Mr. C. is properly named a respondent under New York law, the issue is a troublesome one: “One further question must be addressed: that is, the definition of *18 ‘parent’. The social reality, of course, is that the ‘parenting function’ is carried out by persons in widely divergent statuses; paramours may, for example, be more ‘psychological parents’ than the absent biologic parent in a particular family unit. But for purposes of identifying parental misconduct which is properly subject only to child protective laws, it seems right to restrict this rubric only to ‘parents’ who have a legally recognized right to custody of the child. The basic sanction under the child protective laws is the threat of loss of custody. Accordingly, other forms of adult-child relations must be subject to criminal law forums and sanctions, no matter how much out of step with the psychological reality or parent-child dynamic bonds in the individual case.” (Juvenile Justice Standards Project, Institute of Judicial Admin, Amer Bar Assn Standards Relating to Abuse and Neglect, p 116 [1977 tentative draft]; also compare the definition of “ ‘members of the same family or household’ ” in Family Ct Act, § 812, subd 1; cf. People v Allen, 27 NY2d 108.)

. Article 10 contains a somewhat camouflaged Statute of Limitations applicable to both abuse and neglect cases. Subdivision (c) of section 1013 provides that: “In determining the jurisdiction of the court under this article, the age of the child at the time of the proceedings are initiated is controlling.” This provision would preclude the filing of an article 10 petition after a child reached 18 (Family Ct Act, § 1012, subds Tel, [f]), regardless of when the acts complained of occurred (compare Family Ct Act §8 302.1, 714). Thus, the period in which a proceeding would have to be commenced in order to be “timely” would depend on the child’s age at the time the alleged abusive or neglectful acts occurred.

. Subdivision (c) of section 1051 provides: “If acts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it, the court shall dismiss the petition and shall state the grounds for the dismissal.” Prior to the enactment of present article 10, abuse was considered a serious form of neglect under former article 3; thus, abuse cases were subject to such dismissals under former section 351. Subdivision (c) of section 1051 limited such dismissals to neglect cases only.

. The court refused to dismiss neglect cases involving other children (siblings) based on the abuse of the deceased child (see Family Ct Act, § 1046, subd [a], par [i]). It is difficult to determine whether or not the court would have dismissed the abuse case if the child had died after the proceeding was commenced, but prior to the fact-finding hearing.

. Such an interpretation of these recent amendments to section 384-b of the Social Services Law would preclude a subdivision (a) of section 1014 dismissal of any abuse case under section 1012 (subd [e], pars [i], [iii] [felony sex offenses only]), except, perhaps, where “the child who is the subject of the proceeding has died * * * and the parent or parents have no other children” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, 1982-1983 Supp Pamph, Family Ct Act, § 1014, p 490; emphasis in original; cf. Matter of Lambert, 119 Misc 2d 326).