OPINION OF THE COURT
William P. Warren, J.
This proceeding was commenced in this court by the filing of a verified petition on August 3, 1990. The petition alleges that the infant, Bryan L. (date of birth: May 17, 1989) has been neglected by the respondents, A. M. L. and U. L., who are his parents. Both respondents were represented by counsel and entered denials to the allegations in the petition. The matter came on for a fact-finding on October 12, October 25 *900 and was concluded on November 20, 1990. Counsel were directed to submit memoranda of law by December 20, 1990, and the court has received and reviewed each counsel’s memorandum.
The petition alleged that on July 16, 1990, an act of domestic violence occurred when the respondent, U. L., punched and beat the respondent, A. M. L., and as a result she suffered a broken rib, fractured scapula, trauma to the left clavicle, and numerous bruises and abrasions. It claimed that the child, Bryan, was present during the incident. Two incidents of the respondent, U. L., slapping the respondent, A. M. L., across the face while the infant was present were also alleged to have occurred. The first was apparently in August of 1989 and the second on July 2, 1990. The claim is made that similar acts of domestic violence had been committed by the respondent, U. L., against the respondent, A. M. L., since she first became pregnant.
The first witness for the petitioner was Dr. William Getz, who is an emergency room physician at Good Samaritan Hospital. Dr. Getz has a speciality of emergency medicine and was qualified to testify as an expert in that field. On July 16, 1990 Dr. Getz examined A. M. L. He testified that she was complaining of an assault on the back and being hit on the face. He was told that her husband hit her. His examination revealed bruises over her scapula, she was unable to lift her arm, and complained of pain in the left back. X rays revealed a fracture of the scapula and top rib. Dr. Getz testified that the fracture would have to have been caused by a very strong blow.
Medical records from Good Samaritan Hospital were introduced into evidence. The emergency room record notes that the patient states she was assaulted, injured her back, left arm, and face. The Social Services notes read: "Patient states that her husband beats her every few weeks since before she was married. * * * Patient informs me that her fifteen-month-old son and eight-year-old step-daughter were present at the time of the assault.”
Assistant District Attorney Beth Gardner testified that the respondent, A. M. L., originally filed a complaint in the Spring Valley Justice Court for assault. The case is still open in that court, however, Mrs. L. has consistently asked that the charges be dropped.
Child Protective Service (CPS) Worker Peggy Gordon re *901 ceived a report of suspected child abuse or neglect on July 16, 1990. She met the respondent, A. M. L., at the Spring Valley Police Department and interviewed her. The respondent’s arm was in a sling and she proceeded to tell Mrs. Gordon that her husband had hit her during an argument. She said he struck her three times across the back, slapped her, she fell to the floor and thereafter called the police.
In further discussions with the respondent, Mrs. Gordon was told that the respondents had been married for two years. He began to hit her when she was pregnant with Bryan. When the child was three months old, she had been slapped across the face by her husband. Two weeks prior to the July 16, 1990 incident, her husband had hit her. She claimed that although she had been hit various times throughout the marriage, only on July 16 was she seriously hurt.
During subsequent interviews Mrs. L. told CPS Worker Gordon that Bryan was present during the incident of July 16, 1990. When asked under cross-examination where Mrs. L. had said Bryan was at the time of the incident, Mrs. Gordon testified that Mrs. L. had responded to the question by stating they were "all there”. Under further questioning, CPS Worker Gordon referred to Mrs. L. as saying Bryan was "present” both during the July 16 incident and on July 2 when Mr. L. struck her.
The respondent, A. M. L., testified that on July 16 she had an argument with her husband in the living room. She claimed she threw a stereo on the floor, fell down, hurt herself and went to the hospital. She maintained that she did not tell Dr. Getz her husband had struck her and did not remember telling the CPS worker that her husband had hit her. She claimed that he did not hit her and that the reason she called the police was to help stop arguments they were having. She claimed she did not read papers she signed in connection with charges in the Village of Spring Valley and that those charges were a mistake. Her testimony was that she was injured when she fell jumping from one sofa to another in order to "not have more serious conversation”. According to her, Mr. L. never struck her during the entire marriage and she does not understand why all of this (the Spring Valley Justice Court and Family Court proceedings) was happening.
The court heard from Monique L., the 10-year-old child of U. L. from a prior marriage. According to Monique, on July 16, 1990 an argument started between her dad and A. M. L. *902 During the argument, A. M. L. threw some keys on the floor, which keys hit Bryan in the toes. Mr. L. said some words to Mrs. L. and slapped her lightly. They were fighting with words in Portuguese (their native language), and then A. M. L. threw over the stereo. Monique and her half brother, Bryan, left the room and when she returned, A. M. L. had left.
FINDINGS OF FACT
The court does not credit the testimony of the respondent, A. M. L. Her version of the events is utterly at odds with versions she had previously given to the doctors at the emergency room, to a social worker at the hospital, and to the CPS worker. Her claim of having received the fractures of the scapula and rib by falling from a couch is not credible. She maintained that she called the police to stop the arguing, that her husband never struck her, and that she jumped from one sofa to another to avoid more serious conversation. Her testimony was not logical, is inconsistent with prior statements she has made, is contradicted by other witnesses, and is not believable. Therefore, the court will disregard her testimony.
It is found that on July 16, 1990 the respondent, U. L., struck the respondent, A. M. L., on more than one occasion with considerable force and, as a result, she sustained injuries consisting of a fracture of the scapula and a fracture of the top rib, bruises, black and blue marks and experienced pain. It is also found that during this incident of domestic violence, the infant, Bryan, was present in the vicinity of the occurrence. However, because the testimony was general in nature, no precise finding can be made as to the infant’s location during the altercation. Bryan L. was approximately 14 months of age at the time of the incident and the respondents are his parents. It is found that there have been other incidents of domestic violence over the past two years in which the respondent, U. L., has struck the respondent, A. M. L.
CONCLUSION OF LAW
Having made findings of fact, the court is confronted with the issue of whether those findings, standing alone, constitute child neglect pursuant to article 10 of the Family Court Act. Section 1012 (f) of the Family Court Act provides as follows:
" 'Neglected child’ means a child less than eighteen years of age
*903 "(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care”.
There was no proof presented to the court that this child suffered any actual impairment of his physical, mental or emotional condition. Consequently, the only arguable claim for neglect lies under that portion of the statute which refers to physical, mental or emotional condition of the child being "in imminent danger of becoming impaired”.
It is clear that under certain facts the Family Court may find neglect where a parent poses an imminent risk to a child’s life or health. (Matter of Alfredo HH., 84 AD2d 860; Matter of Jason B., 117 Misc 2d 480.) But it is equally well established that to sustain a finding of neglect there must be proof of impairment or imminent danger of impairment of the child’s physical, mental or emotional condition. (Matter of Susan B., 102 AD2d 938; Matter of Shelley Renea K., 79 AD2d 1073; Matter of William EE., 157 AD2d 974.) In Matter of William EE., the Appellate Division, Third Department, reviewed the Family Court Judge’s findings of fact and reversed a determination of neglect. The court stated:
"Although we recognize that respondents’ home environment was less than ideal, a literal reading of Family Court’s findings of fact indicates that the determinations of neglect were grounded upon nothing more than Donald’s request for assistance following a single incident of marital discord and the vague hearsay allegations of children of very tender years that their home environment was somewhat volatile and they were sometimes hit.
"Conspicuously absent at the fact-finding hearing was evidence that any of the children had ever been injured, physically, mentally or emotionally, by any of the claimed conduct. The children told Thomas that they had been struck but not that they had been injured. We find no testimony concerning cuts, welts, bruises or even pain, except for some evidence of minor bruises in the area of the boys’ knees which, considering their ages, is more persuasive evidence of play than of punishment and hardly corroborative of excessive corporal punishment (see, Family Ct Act § 1046 [a] [vi]).” (Matter of William EE., 157 AD2d 974, 975-976.)
The court is confronted with parents involved in domestic *904 violence*on several occasions, one of which was quite violent and occurred, to some degree, in the presence of a 14-month-old child. Clearly, risk of mental or emotional impairment from this domestic violence would require expert testimony regarding the effect upon a child of witnessing domestic violence. In the absence of such expert testimony, this court is unable to make a finding of imminent risk of mental or emotional impairment by virtue of witnessing domestic violence.
The noted commentator, Douglas J. Besharov, in reviewing Family Court Act § 1012 (f) (i) stated: "Similarly, there is no definition of the phrase 'imminent danger of becoming impaired’, although it presumably means just that — the danger must be near or impending, and not merely possible.” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 238 [1983].)
Since the court agrees with Mr. Besharov’s view, under the facts found by this court today, the only plausible argument for finding neglect would be that the acts of violence perpetrated by the respondent, U. L., upon the respondent, A. M. L., were by their very nature so explosive and uncontrollable as to place a 14 month old who is in the presence of this violence in imminent risk of physical impairment.
The court believes that the proof adduced at the fact-finding hearing was insufficient to establish that this 14 month old was at risk of imminent danger during the July 16 incident or during any other incident of domestic violence involving the respondents. Perhaps the violence was acute enough to have placed the child in imminent risk. Alternatively, perhaps it was caused by a single blow from Mr. L. when the child was safely out of harm’s way. To make either finding would require this court to speculate as to the location of the parties, including the infant, at the time the assault occurred. If there had been evidence of objects being thrown about or weapons being used and the child being in the room at the same time, perhaps a different result would have been reached. Since no proof was ever presented sufficient to permit the court to find that the child was in imminent danger, the court cannot conclude that respondents’ conduct constituted child neglect.
The court in no way wishes this decision to be interpreted as condoning the abusive behavior of the respondent, U. L., nor the behavior of A. M. L. who has failed to actively pursue either a criminal proceeding or one under article 8 of the *905 Family Court Act. Rather, this decision is based upon the court’s reading of the statutory and case law which requires the petitioner to present evidence of how the respondents’ conduct placed the child at risk of imminent danger. Since the evidence which was presented is insufficient to allow such a finding, the petition is dismissed and the temporary order of protection of August 7, 1990 is vacated.